1
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL CARPENTER, ET AL. | : |
| VS. | : NO. 3:14cv741(SRU) |
| LYNN ALLEN, ET AL. | : MARCH 1, 2021 |

### PLAINTIFF DANIEL CARPENTER'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

This action was brought almost seven years ago. Now, the Department of Justice has decided that the real defendant should be the United States and has filed a Notice of Substitution and a Motion to Dismiss, all on the legally untenable theory that the case should have been brought under the Federal Tort Claims Act and therefore should be dismissed for various reasons among them that no administrative claim was filed.

The theory behind this newly discovered defense is that the suit is not permitted by <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). If it is not, then the defendants cannot be sued in their individual capacities as they are in this case; the United States must be substituted; and the case then must be dismissed.

The defendants' fundamental premise is wrong, however, and the house of cards constructed upon it collapses.

The Complaint in this action alleges that the defendants, who are sued only in their individual capacities, were acting under color of law when, on May 26, 2011, they searched

2

property of the plaintiffs located at 100 Grist Mill Road in Simsbury and at 300 Stamford Place in Stamford, among other locations. The Complaint alleges that the defendants "engaged in a wholesale search of the premises..., holding individuals, including Mr. Carpenter, against their will and incommunicado for several hours and causing substantial damage to the premises...." (Complaint, ¶ 14) It alleges that the search "was unreasonable in scope and duration" (Id., ¶ 15), and that "[t]he defendants seized items beyond the scope of what was authorized...." (Id., ¶ 16) The Complaint expressly alleges that it is brought under the authority of *Bivens*. (Id., ¶ 2)

Courts have, of course, expressed great reluctance to expand the *Bivens* remedy beyond the Fourth Amendment protection which it afforded. *See, e.g.*, Hernandez v. Mesa, 140 S.Ct. 735, 739, 741-43 (2020); Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017). That reluctance is of no help to the defendants, however, because the Fourth Amendment claims in this case fall squarely within the parameters already set forth in *Bivens*. In fact, the Supreme Court has clearly held that a *Bivens* action can be brought for violations of the person's constitutional rights. *See, e.g.*, Carlson v. Green, 446 U.S. 14, 20-23 (1980). No court has held or even suggested that *Bivens* does not cover the type of Fourth Amendment violations alleged in this lawsuit. Accordingly, the Notice of Substitution should be rejected. This case is properly brought against the individual named defendants for Fourth Amendment violations squarely covered by *Bivens*.

The defendants further claim that this action is barred by Heck v. Humphrey, 512

3

U.S. 477, 487 (1994), which held that a Section 1983 action is prohibited if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed....But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."

The plaintiff's Fourth Amendment claim against the defendants, if successful, will not demonstrate the invalidity of his conviction and therefore *Heck* is no bar to this suit. In fact, the Supreme Court listed an unlawful search and seizure as a classic example of a *Bivens* action that would not be affected by a plaintiff's conviction. *See* Heck v. Humphrey, 512 U.S. 477, 487 at n. 7 (1994): "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the §1983 plaintiff's still-outstanding conviction." *See, also,* Poventud v. City of New York, 750 F.3d 121, 136 (2nd Cir. 2014). That is so because the plaintiff's conviction did not depend on those aspects of the search and seizure challenged by this suit, such as the overbreadth of the seizures and the unreasonableness of the execution; and the fact that the Search Warrant Affidavit was not attached to the Search Warrant itself as required by the Supreme Court in Groh v. Ramirez, and certainly by the Second Circuit in In re 650 Fifth Ave. & Related Props., 934 F.3d 147, 163 (2d Cir. 2019) ("a "glaringly deficient warrant" that "[n]o reasonable officer" would presume valid...where the warrant did "not even arguably include a reference to

4

the…alleged crimes or a temporal scope for the items to be seized."). Defendants have not even attempted to carry their burden of proving otherwise. The plaintiff's conviction did not in any way depend on the items seized that were beyond the scope of the warrant, nor did it depend on the outrageous manner in which that warrant was executed both with respect to damage inflicted upon the premises or to the abuse of his person or the theft of property that still has not been returned to this very day in violation of the Fourth Amendment. Furthermore, the Second Circuit upheld Mr. Carpenter's conviction despite the fact that the Search Warrant in this case was *per se* constitutionally defective.

The Second Circuit has gone so far as to say that a search carried out pursuant to an invalid search warrant, or beyond the scope of a valid search warrant is akin to a search with no warrant at all, which is *per se* "unreasonable" pursuant to the Fourth Amendment. See Zuniga-Perez v. Sessions, 897 F.3d 114 (2d Cir. 2018), which states that "even where a warrant has been issued, law enforcement agents are bound by its terms because a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to acting without a warrant at all." Id. at 123, *citing* Simon v. City of N.Y., 893 F.3d 83, 94 (2d Cir. 2018). *See, also,* Massachusetts v. Sheppard, 468 U.S. 981, 988, n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.").

The defendants also seek dismissal pursuant to F.R.Civ.P. 12(b)(6) on the ground of Qualified Immunity. Qualified Immunity is an affirmative defense, and it is the

5

defendants who have the burden of proof to show they are entitled to Qualified Immunity. *See* Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Zellner v. Summerlin, 494 F.3d 344, 368 (2nd Cir. 2007). The only basis for that claim, as to which the defendants have the burden of proof, is their assertion that the search warrant creates the presumption of probable cause. Not only is that theory discounted in the Second Circuit, *see* In Re 650 Fifth Avenue, the defendants who conducted the search in that case were not even protected by the good faith exception under United States v. Leon, 468 U.S. 897, 922-23 (1984). To be valid, a search warrant must have three things contained in it, and they cannot be contained in documents that are not attached to the search warrant. *See* United States v. Ulbricht, 858 F.3d 71, 99-100 (2d Cir. 2017) ("First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes."). Exhibit One, attached, is the Lynn Allen Search Warrant which clearly lacked all three of the *Ulbricht* requirements.

Furthermore, defendnts' argument does not even address the plaintiff's Fourth Amendment claims that the defendants exceeded the scope of that warrant and that they executed it in an unreasonable manner inconsistent with the warrant's command.[1]

---

[1]  Bergquist v. County of Cochise, 806 F.2d 1364, 1368-69 (9th Cir. 1986) ("Officers' conduct in executing a search warrant is always subject to judicial review as to its reasonableness. Dalia v. United States, 441 U.S. 238, 258 (1979); Tarpley v. Greene, 684 F.2d 1, 8 (D.C. Cir. 1982). Officers may face Section 1983 liability for

6

Finally, the defendants argue that the plaintiffs' damages claims are insufficiently specific. The assertion that the Complaint's allegations of damages must be as specific as its allegations pertaining to liability has no support in the law. It is the claim of liability that is subject to the "reasonable specificity" requirement of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009); not the allegation of consequential damages. There is no legal basis for the defendants' argument.

## II. THE SEARCH OF 100 GRIST MILL ROAD WAS AKIN TO A WARRANTLESS SEARCH

The Second Circuit has long held that if the search warrant is defective then the search is tantamount to a warrantless search and is "*per se*" unconstitutional. *See Zuniga-Perez v. Sessions*, 897 F.3d 114 (2d Cir. 2018), which states that "even where a warrant has been issued, law enforcement agents are bound by its terms because a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to acting without a warrant at all." *Id.* at 123, *citing Simon v. City of N.Y.*, 893 F.3d 83, 94 (2d Cir. 2018). *See, also, Massachusetts v. Sheppard*, 468 U.S. 981, 988, n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.").

---

executing a warrant in an unreasonable manner."). See Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir. 1979) ("From the moment of entry until the moment of departure, appellees' conduct was subject to scrutiny for reasonableness under the fourth amendment.")

7

The intrusion into an office is therefore governed by the normal Fourth Amendment rule that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *G.M. Leasing v. United States*, 429 U.S. 338, 358 (1977), *citing Camara v. Municipal Court*, 387 U.S. 523, 528-29 (1967). The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes, and any opposition to that mandate could not be defended in light of the Supreme Court's clear holdings to the contrary. *See, e.g., See v. City of Seattle*, 387 U.S. 541 (1967); *Go-Bart v. United States*, 282 U.S. 344 (1931); *Silverthorne Lumber v. United States*, 251 U.S. 385 (1920). Nor can it be claimed that corporations are without some Fourth Amendment rights. *Go-Bart*; *Silverthorne*; *Oklahoma Press Pub. v. Walling*, 327 U.S. 186, 205-06 (1946); *Hale v. Henkel*, 201 U.S. 43, 75-76 (1906). *Cf. California Bankers v. Shultz*, 416 U.S. 21 (1974); *Federal Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298, 305-06 (1924); *Wilson v. United States*, 221 U.S. 361, 375-76 (1911); *Consolidated Rendering v. Vermont*, 207 U.S. 541, 553-54 (1908).

To hold otherwise would belie the origin of the Fourth Amendment and the American experience. An important forerunner of the first 10 Amendments to the United States Constitution, the Virginia Bill of Rights, specifically opposed "general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed." The general warrant was a recurring point of contention in

8

the Colonies immediately preceding the Revolution. The particular offensiveness it engendered was acutely felt by the merchants and businessmen whose premises and products were inspected for compliance with the several parliamentary revenue measures that most irritated the colonists. "[T]he Fourth Amendment's commands grew in large measure out of the colonists' experience with the writs of assistance...[that] granted sweeping power to customs officials and other agents of the King to search at large for smuggled goods." *United States v. Chadwick*, 433 U.S. 1, 7-8 (1977). *See, also, G.M. Leasing* at 355. Against this background, it is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311-13 (1978). As Justice Sotomayor observed:

> "The Fourth Amendment was adopted specifically in response to the Crown's practice of using general warrants and writs of assistance to search "suspected places" for evidence of smuggling, libel, or other crimes. *Boyd v. United States*, 116 U.S. 616, 625-26 (1886). Early patriots railed against these practices as "the worst instrument of arbitrary power" and John Adams later claimed that "the child Independence was born" from colonists' opposition to their use. *Id.* at 625. The fundamental purpose of the Fourth Amendment's warrant clause is "to protect against all general searches. *Go-Bart* at 357. The Fourth Amendment "protects all, those suspected or known to be offenders as well as the innocent." *Id.* And this Court long ago recognized that efforts "to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Weeks v. United States*, 232 U.S. 383, 393 (1914)." *Messerschmidt v. Millender*, 565 U.S. 535, 560, 571 (2012).

The plaintiffs have, in short, sufficiently alleged violations of their Fourth

9

Amendment rights by the individual named defendants. The suit is not barred by *Heck* and it is permitted by *Bivens*. The Motion to Dismiss must be denied.

                      THE PLAINTIFF DANIEL CARPENTER

BY: _____/s/_____(ct00215)___
      JOHN R. WILLIAMS (ct00215)
      51 Elm Street
      New Haven, CT 06510
      203.562.9931
      Fax: 203.776.9494
      jrw@johnrwilliams.com

CERTIFICATION OF SERVICE

On the date above stated, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                      _____/s/_____(ct00215)___
                      JOHN R. WILLIAMS

# EXHIBIT ONE

Unconstitutional Lynn Allen Search Warrant

11-92M-01 (JG)

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Connecticut

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The entirety of the premises located at 100 Grist Mill<br>Road in Simsbury, Connecticut, and more particularly<br>described in Attachment B | ) <br> ) <br> ) Case No.<br> ) <br> ) <br> ) |

COPY

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ____Connecticut____
*(identify the person or describe the property to be searched and give its location)*:
The entirety of the premises located at 100 Grist Mill Road in Simsbury, Connecticut, and more particularly described in Attachment B

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment D

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before    6/4/11   
                                                      *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Joan G. Margolis                                  .
           *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                 ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  5/25/11, 12:45 p.     _____
                                              Judge's signature

City and state:  New Haven, CT                Joan G. Margolis
                                              *Printed name and title*

# EXHIBIT TWO

Search Warrant deemed to be "Glaringly Deficient" by the Second Circuit in *In re 650 Fifth Avenue*

DEC-19-2008 12:37   ALAVI FOUNDATION                                P.02/02

AO
(Rev.
8/97)

# SEARCH WARRANT ON WRITTEN AFFIDAVIT

| United States District Court | DISTRICT<br>SOUTHERN DISTRICT OF NEW YORK |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>PREMISES located at 500 FIFTH AVENUE, SUITE 2320, NEW YORK, NEW YORK AND 500 FIFTH AVENUE, FIRST LOWER LEVEL STORAGE AREA UNIT 25, NEW YORK, NEW YORK | DOCKET NO: 08 MAG 2789<br><br>TO: SPECIAL AGENT GEORGE ENNIS OR ANY AUTHORIZED FEDERAL AGENT |

Affidavit(s) having been made before me by Special Agent George Ennis that he has reason to believe that on the premises known as

500 FIFTH AVENUE, SUITE 2320, NEW YORK, NEW YORK, AND 500 FIFTH AVENUE, FIRST LOWER LEVEL, STORAGE AREA UNIT 25, NEW YORK, NEW YORK, and any closed or locked containers therein

in the Southern District of New York, there is now being concealed property, namely

**SEE ATTACHMENT**

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and that the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s);

YOU ARE HEREBY COMMANDED to search on or before December 26, 2008 (not to exceed 10 days), upon receipt by a person within the premises specified of the package described in the supporting affidavit, the person or place named above for the property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to <u>any U.S. Magistrate Judge</u> as required by law.

| NAME OF AFFIANT<br><br>George J. Ennis, Jr.<br>Special Agent<br>Federal Bureau of Investigation | SIGNATURE OF JUDGE OR U.S. MAGISTRATE<br><br>s/ Theodore H. Katz | DATE/TIME ISSUED<br><br>DEC 1 9 2008 |

THEODORE H. KATZ
UNITED STATES     MAGISTRATE JUDGE

TOTAL P.02

## Exhibit A

## ITEMS TO BE SEIZED AT THE PREMISES

1. Any and all documents,[1] including contracts, memoranda of understanding, partnership agreements, incorporation documents, deeds, mortgages, loan documentation, rentals, leases, records of payment, e-mails, letters, memoranda, or other documents or records concerning or relating to the ownership of, rental of, mortgaging of, or investing in the following entities:

   a. Assa Corporation
   b. Assa Company Limited
   c. 650 Fifth Avenue Company
   d. 650 Fifth Avenue, New York, New York
   e. Bank Melli Iran

2. Any and all documents concerning or relating to financial books and records, bank accounts, disbursements, money transfers or employment records of Assa Corporation; Assa Company Limited; 650 Fifth Avenue Company; Bank Melli Iran; the Alavi Foundation; or any of the officers and employees of these entities.

3. Any and all computers; central processing units; external and internal drives; external and internal storage equipment or media; computerized data storage devices; hard disks or floppy disks; CD-ROMs, hard disks, floppy disks; and related or connected computer or data storage equipment.

---

[1] As used herein, the term "documents" means any and all tangible forms of expression, in any language or format, including drafts or finished versions, originals, copies, or annotated copies, however created, produced or stored (manually, mechanically, electronically, electromagnetically, or otherwise), including without limitation: books, papers, files, writings, handwritten notes, typewritten notes, letters, correspondence, memoranda, notebooks, ledgers, term sheets, telexes, telefaxes, telephone message slips, tape recordings, magnetic tapes, digital recordings, electronic recordings, photographs, computerized records stored on computer hard-drives, computer disks, computer hard-drives, recorded telephone messages, recorded fax transmissions, electronic mail messages, voice mail messages, microform, and microfiche.

As used herein, "concerning" means relating to, referring to, describing, evidencing, or constituting.