IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL E. CARPENTER, and<br>GRIST MILL CAPITAL, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>COMMISSIONER, INTERNAL REVENUE<br>SERVICE, JOHN KOSKINEN,<br>SHAUN SCHRADER, VICTOR SONG, and<br>AND JANE AND JOHN DOES 1 TO 72,<br><br>    Defendants. | Case No. 3:13-CV-563-SRU |
| DANIEL E. CARPENTER, and<br>GRIST MILL CAPITAL, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>LYNN ALLEN, *et al.*,<br><br>    Defendants. | Case No. 3:14-CV-741-SRU |

**RESPONSE TO ORDER TO SHOW CAUSE**

"This is the latest chapter in protracted litigation arising out of financial misconduct by Daniel Carpenter and entities controlled by him." *Iantosca v. Benistar Admin. Servs., Inc.*, 567 F. App'x 1, 2 (1st Cir. 2015) (Souter, J.)  Before the Court are two motions by Daniel Carpenter and Grist Mill Capital ("GMC") seeking to compel the United States to return or destroy lawfully seized business records documenting Carpenter's felony scheme involving stranger-originated life insurance.  Return or destruction of the evidence is inappropriate because Plaintiffs have not established that they are entitled to possession of records.  Plaintiffs have never identified the materials over which they claim ownership and Carpenter repeatedly has

disclaimed an interest in most of them. Moreover, the Government's need for the property is ongoing because Plaintiffs continue to place them at issue in their *Bivens* lawsuit and in pending and planned motions in Carpenter's criminal case before Judge Robert N. Chatigny. The United States therefore respectfully requests the Court deny Plaintiffs' motions.

## Background

### *IRS Search of 100 Grist Mill Road*

On April 20, 2010, agents with the Internal Revenue Service Criminal Investigation ("IRS-CI") division executed a federal search warrant at an office building located at 100 Grist Mill Road, Simsbury, Connecticut. That building was rented by Benistar Admin Services, Inc. ("BASI"), a company with which Carpenter claims absolutely no role. *See Carpenter v. Koskinen*, No. 3:13-CV-563-SRU ("*Koskinen*"), Doc. No. 129-2 at ¶ 44 & Doc. No. 129-6 at 7. In addition to GMC and BASI, "there are several hundred companies that operate out of 100 Grist Mill Road[.]" *United States v. Carpenter*, No. 3:13-CR-226-RNC ("*Carpenter*"), Doc. No. 352-9 at 48-49; *see Koskinen*, Doc. No. 129-2 at ¶ 36 & Doc. No. 48-1 at 1.

An IRS-CI investigation established probable cause to believe that companies within that building engaged in a criminal scheme in which individuals claimed that minor injuries resulted in permanent disability and disfigurement in order to appear qualified for – and receive – favorable treatment under the Tax Code. *See id.,* Doc. No. 129-2 at ¶ 6. The search warrant authorized agents to seize records maintained by several companies and entities located at 100 Grist Mill Road. *See Carpenter*, Doc. No. 83-2 at 55. The IRS seized 322 boxes of documents and imaged 11 computers or servers, one thumb drive, and one external hard drive. *See Koskinen*, Doc. No. 129-2 at ¶ 66; *see also id.*, Doc. No. 144 at 5-19.

As this Court has recognized, Carpenter contends that only 40 of the 322 boxes of materials initially seized by the IRS constituted the files and records of his company, Grist Mill

Capital ("GMC")[1], and that all remaining documents belonged to BASI.  *Id.* at ¶ 66; *see also id.*, Doc. No. 144 at 17.

*Rule 41(g) Proceedings Before Judge Covello*

Companies claiming ownership of the evidence seized by the IRS soon filed two Rule 41(g) motions for return of property in the District of Connecticut.  In one of those cases, BASI identified itself as the "owner and custodian" of *all* property seized during the execution of the search warrant, including all of the computers that were imaged.  *See Koskinen*, Doc. No. 48-1 at 1-2; *Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 4.  BASI requested the immediate return of "all property seized by the IRS on April 20, 2010."  *See Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 6.

Seven days later, GMC and 15 other parties filed a second Rule 41(g) miscellaneous case seeking return of the same evidence.  *Pettibone Tavern, LLC v. IRS*, No. 3:10-mc-64-AVC, Doc. No. 1 at 1-2.  Although his alter ego GMC was a movant, Carpenter himself was not a party to either Rule 41(g) case.

Several individuals and entities – including Carpenter – asserted blanket claims of privilege over the seized materials in Wisconsin, where the IRS-CI investigation and related grand jury proceedings were based.  *See Koskinen*, Doc. No. 141-1 at ¶ 4.  Carpenter and other individuals and entities asserted privilege over 76,918 documents.  *Id.*  In order to resolve the blanket privilege claims, Judge Lynn Adelman of the Eastern District of Wisconsin issued three orders regarding the operation of a filter team to review the seized material for privilege.  *Id.* at ¶ 5.

---

[1] GMC is Carpenter's alter ego.  *See Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 6123140, at *3 (S.D.N.Y. Nov. 20, 2013) ("Carpenter is the only individual with an ownership interest, membership interest, or beneficial interest, direct or indirect, in Grist Mill").

3

The parties settled both Rule 41(g) cases pending before Judge Covello when the Government agreed to return the hard-copy documents after a reasonable time, and the movants agreed to stay their Rule 41(g) motions until they received the property. *Id*. at 2. Boxes that contained what the IRS filter team determined to be potentially relevant documents would be scanned, with electronic copies placed onto a hard drive and the originals maintained in the custody of Halloran and Sage LLP, BASI's Connecticut counsel, while boxes with documents that the IRS filter team determined were not potentially relevant would be returned directly to 100 Grist Mill Road. *Id.*, Doc. No. 141-4 at ¶ 8; Doc. No. 140-1 at ¶ 7. Judge Covello accepted the parties' stipulated resolution. *Id.*; *see also Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 22; No. 3:10-cv-64-AVC, Doc. No. 44. Pursuant to the agreement and Judge Adelman's orders, the filter team scanned the responsive documents and returned 320 of the 322 boxes to BASI or Halloran and Sage on or before June 16, 2011; the investigators retained two original boxes under a subsequent agreement with Carpenter's Wisconsin counsel. *See Koskinen*, Doc. No. 40-1 at 2 & 141-1 at ¶ 18.

*DOL Search Warrants and STOLI Case Before Judge Chatigny*

In May 2011, the Department of Labor ("DOL") obtained search warrants in a separate, Connecticut-based, investigation of Carpenter's conduct. That case focused on his devising and executing a scheme to defraud life insurance companies by using misrepresentations to induce them to issue high-value life insurance policies to straw insureds (the "STOLI case"). Doc. No. 141-3 at ¶ 7. The DOL obtained a federal search warrant authorizing agents to seize records related to several companies located at 100 Grist Mill Road. *See Carpenter v. Allen*, No. 3:14-CV-741-VAB ("*Allen*"), Doc. No. 1 at ¶ 10; *see also Carpenter*, Doc. No. 81-3 at 1. On May 26, 2011, the DOL executed the search warrant and agents seized 41 boxes of documentary evidence

4

from 100 Grist Mill Road.[2] *Id.*, Doc. No. 98 at 27. In addition, because some of the evidence seized by the IRS in 2010 was relevant to the DOL investigation, the DOL obtained federal search warrants to copy and subsequently search the images of the 11 computers or servers, one thumb drive, and one external hard drive obtained in April 2010 by the IRS; a search warrant in Wisconsin to search the small amount of material still being held by the IRS; and a grand jury subpoena to Halloran and Sage for certain material contained in the boxes that had been returned to Halloran and Sage pursuant to the Rule 41(g) settlement. *Id.*

On December 12, 2013, Carpenter was charged in the District of Connecticut in a 33-count criminal indictment with conspiracy to commit mail and wire fraud, aiding and abetting, and substantive counts of mail and wire fraud as a result of the DOL investigation. *See Carpenter*, Doc. No. 1. The case was assigned to Judge Chatigny. On May 14, 2014, the grand jury returned a 57-count superseding indictment against Carpenter, which included the same counts as in the original indictment and added counts of money laundering, illegal monetary transactions, and money laundering conspiracy. *See id.*, Doc. No. 53.

On September 15, 2014, Carpenter filed two motions in the STOLI case seeking, among other things, the return or destruction of the same evidence at issue in both of these civil proceedings. *See id.*, Doc. No. 81 at 25 & 29-32; Doc. No. 83 at 28-31. Carpenter raised the same allegations of wrongdoing and sought as a remedy the suppression and return or destruction of the very same evidence as in the two civil lawsuits now before this Court.

---

[2] On the same date, the DOL also seized 42 boxes while executing a search warrant at 300 First Stamford Place, Stamford, Connecticut, which houses the sales and marketing business offices of BASI and other associated businesses. *Carpenter*, Doc. No. 98 at 20. Carpenter does not appear to claim an interest in those documents, nor does he appear to seek return or destruction of them in this lawsuit. *See, e.g., Allen*, Doc. No. 1 at ¶ 18 (alleging "raid and unlawful search of 100 Grist Mill Road").

5

Judge Chatigny denied Carpenter's motion to suppress the evidence seized both during the IRS's 2010 search and the DOL's 2011 search, and also denied Carpenter's request for return of all such documents pursuant to Rule 41(g).  *See Carpenter*, 2015 WL 9461496 (D. Conn. Dec. 24, 2015).  Judge Chatigny denied both motions in their entirety, specifically finding that the 2010 IRS warrant and 2011 DOL search warrant were sufficiently particularized and not overbroad, *id.* at *5, that no material omission or misstatement in the search warrant affidavits were established, *id.* at *5-*6, and that probable cause supported both searches, *id.* at *6.

Regarding Carpenter's Rule 41(g) request to return all documents from both 2010 and 2011 searches, Judge Chatigny distinguished the since-vacated panel opinion in *United States v. Ganias,* 755 F.3d 125 (2d Cir. 2014), *vacated,* 824 F.3d 199 (2d Cir. 2016) (*en banc*), explaining that the review of the electronically-stored information obtained in the searches was still ongoing since blanket claims of privilege asserted by several individuals and entities (including Carpenter) prevented the review of the documents until June 2013 and the Government did not have a full opportunity to review the voluminous materials.  *Carpenter*, 2015 WL 9461496, at *7 (*citing In the Matter of a Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386 (S.D.N.Y. 2014)).  In denying Carpenter's request for suppression and return of all documents during the two searches, Judge Chatigny held,

> In this case, the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial.  The defendant, on the other hand, has not established that he has standing to demand return of the vast majority of documents, which are in the nature of corporate records.  Nor has he shown that he needs any of the documents in order to prepare his defense or for some other legitimate purpose.  Balancing the interests of the parties in light of the delay caused by the privilege litigation, and the volume of the documents, the Government's retention of the documents pending further proceedings in this case is reasonable.

*Carpenter,* 2015 WL 9461496, at *7.

Judge Chatigny therefore denied Carpenter's motion to suppress the evidence seized during the 2010 and 2011 searches and also denied his request for return of all such documents pursuant to Rule 41(g). *See id.* Directly addressing the return of items sought in these civil cases, Judge Chatigny explained,

> Unlike the scenario in *Ganias*, the Government represents that review of the electronically stored information obtained in the searches at issue here is still ongoing. The Government explains that blanket claims of privilege prevented review of the documents until June 2013 and that it has not had a full opportunity to review the documents, which are voluminous. Crediting the Government's representations, it is not refusing to return or destroy materials simply because they might be useful in a subsequent investigation.

*Id.* at *6-*7.

Judge Chatigny conducted a bench trial in the STOLI case in February and March of 2016. During the trial, Carpenter testified at length over multiple days. Among other things, he denied involvement in a STOLI scheme to defraud insurance companies. He also denied that he controlled any of the entities located at 100 Grist Mill Road, except for GMC. *See United States v. Carpenter*, 190 F. Supp. 3d 260, 273 (D. Conn. 2016). Judge Chatigny explicitly rejected Carpenter's denials, holding that "there is overwhelming evidence that [Carpenter] orchestrated a scheme to defraud the carriers into issuing policies based on … misrepresentations[.]" *Id.* at 267 n.7, *see also id*. at 276 n.17 & 280 n.23. Accordingly, Carpenter was found guilty of each of the 57 counts of the superseding indictment. *Id*. at 297.

After trial and before sentencing, Carpenter filed various motions in which he continued to deny any involvement with the companies located at 100 Grist Mill Road, aside from GMC. *See Carpenter*, Doc. No. 248 at 7 (claiming that "Mr. Carpenter resigned from any and all 'Benistar' entities that he was affiliated with in January 2004.").

Carpenter also filed a motion to retain at his home all discovery materials, including the materials seized by warrant from 100 Grist Mill Road. *See id.*, Doc. No. 258. The Government

7

opposed that motion because of the security risks posed by Carpenter's retention of that sensitive information, which contains vast amounts of personal identifying information (addresses, phone numbers, dates of birth, and social security numbers), financial information, and medical information of hundreds of private citizens that was not readily extractable. *See id.*, Doc. No. 270, at 2.

The Government opposed permitting a twice-convicted felon like Carpenter—who was convicted of defrauding scores of victims in two federal cases[3]—to personally retain corporate documents containing the personal identifying information of hundreds of private citizens. *See id.* at 12-13. The Government pointed out that, pursuant to a prior agreement, Carpenter already was entitled to home-based remote access to all discovery materials, which were held by his counsel, and thus there was no further interest served by Carpenter having physical custody of the documents. *See id.* at 4, 12-15. Judge Chatigny agreed with the Government and denied Carpenter's request. *See id.*, Doc. No. 300 & Doc. No. 312 at 21-22. Among other reasons, Judge Chatigny found that, balancing Carpenter's interest in retaining the documents with "the privacy interests of the individuals who have their personal information in their documents, which cannot be extracted, . . . the government's interest in maintaining the respect for law . . . could be eroded if Mr. Carpenter's request were granted and he had access to all of this material[.]" *Id.*, Doc. No. 312 at 22.

On December 3, 2018, Carpenter was sentenced to 30 months' imprisonment and initially ordered to pay restitution of $12,865,026.18 based on a loss amount of $54 million. *See Carpenter*, Doc. Nos. 400, 466, 470. Judge Chatigny also imposed certain occupational

---

[3] Carpenter was previously convicted in the District of Massachusetts on 19 counts of mail and wire fraud for misappropriating client escrow funds and defrauding his victims out of more than nine million dollars. *See United States v. Carpenter*, 781 F.3d 599, 603, 607 (1st Cir. 2015).

restrictions during Carpenter's term of supervised release, which prohibit Carpenter from engaging in any for-profit business, being involved in the finances of any not-for-profit entity, and from acting in a fiduciary capacity, without the approval of the United States Probation Office. *See id.*, Doc. No. 466 at 3. Carpenter's convictions were affirmed on direct appeal, and his petition for certiorari was denied. *See United States v. Bursey*, 801 F. App'x 1 (2d Cir. Jan. 13, 2020), *cert. denied,* No. 20-455, 2020 WL 6551799 (Nov. 9, 2020).

*Status of Litigation and Seized Documents*

Except for one box containing software and software-related documents, the IRS has not had control or custody of *any* boxes it seized in 2010 for nearly 10 years. *See Koskinen*, Doc. No. 141-1 at ¶¶ 11 & 13. Of the items initially seized by the IRS, DOL agents retain possession of all or part of 26 boxes of documents. *See id.,* Doc No. 140 at 2. The DOL also maintains control of the evidence it lawfully seized in the STOLI case, which resulted in Carpenter's 57 counts of conviction.

Although Carpenter's convictions became final when his petition for certiorari was denied on November 9, 2020, the evidence held by the DOL is still needed by the Government because those items have been placed into dispute by Carpenter's continued civil and criminal litigation. Currently pending before Judge Chatigny are Carpenter's motion for release of grand jury transcripts, motion to dismiss the indictment, motion to reduce period of supervised release, and an ongoing dispute over a claim of nearly $40 million in restitution owed to reinsurers. *See Carpenter*, Doc. No. 470 at 1 n.1; Doc. Nos. 473, 538, 539, 541. Carpenter appealed Judge Chatigny's initial restitution order. *See id.*, Doc. No. 475. That appeal has been held in abeyance until Judge Chatigny rules on restitution to reinsurers. In addition, Carpenter has explained that he intends to continue to litigate his criminal case and seek collateral review of his conviction pursuant to 28 U.S.C. § 2255. *See id.*, Doc. No. 542 at 1, 5. The Government has

asked Judge Chatigny to construe Carpenter's pending motion to dismiss the indictment as a motion pursuant to 28 U.S.C. § 2255. *See id.*, Doc. No. 543 at 1, 8-9.

Moreover, the pending *Bivens* allegations in *Carpenter v. Allen* directly implicate the items currently in DOL custody.  As in their unsuccessful suit against IRS-CI Agent Shaun Schrader, Carpenter and GMC seek damages from the Department of Labor's case agent and two other federal agents involved in the STOLI case and 100 "John Does and Jane Does." *See Allen*, Doc. No. 1.  They contend that the DOL agents violated Plaintiffs' "right to be free from unreasonable searches and seizures, Mr. Carpenter's right to remain silent, and Mr. Carpenter's Sixth Amendment right to counsel." *Id.* at ¶ 1.  In particular, Carpenter alleges that "the defendants seized items beyond the scope of what was authorized, including income tax filings, banking, insurance policies and other personal financial information of Mr. Carpenter's wholly unrelated to any conceivable violation of any law or pursuant to any lawful purpose of the search[,]" *id.* at ¶ 16, and seized attorney-client privileged communications, *id.* at ¶ 19.  Both Plaintiffs recently explained that they still seek *Bivens* damages based on alleged violations of the Fourth Amendment during the 2011 search of 100 Grist Mill Road. *See Allen*, Doc. No. 68.

## APPLICABLE LAW

Under Federal Rule of Criminal Procedure 41, "an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of the property when aggrieved by the government's continued possession of it." FED. R. CIV. P. 41, advisory committee's note to 1989 amendment.  Rule 41(g) and its committee notes do not address the standard that governs whether property should be returned to a movant, and the Second Circuit apparently has not addressed the issue. *See* FED. R. CRIM. P. 41(g); *see also United States v. Gotti*, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003).  The Second Circuit has cautioned that "[j]urisdiction under Rule 41 is to be exercised with great restraint and caution

since it rests upon the court's supervisory power over the actions of law enforcement officials." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006) (citations and internal quotation marks omitted).

District courts in this Circuit have identified three factors that a moving party must demonstrate in order to prevail: (1) the party is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the Government's need for the property as evidence has ended. *United States v. Morgan*, 443 F. Supp. 3d 405, 407 (W.D.N.Y. 2020) (citing cases). Some courts hold that when a criminal proceeding concludes, the burden remains on a convicted individual to establish entitlement to the return of property. *See Awan v. United States*, 2014 WL 1343129, at *3 (E.D.N.Y. Mar. 31, 2014) (citing cases). Other courts disagree, finding that when criminal proceedings are complete, "the evidentiary burden for a Rule 41(g) motion shifts to the Government because there is a presumption that the person from whom the property was allegedly taken has a right to its return." *Id.* (citations and internal quotation marks omitted). Even if the burden shifts to the Government, "this burden-shifting rule does not excuse the defendant from showing as a preliminary matter that the property in question was in fact his to begin with." *Ferreira v. United States*, 354 F. Supp. 2d 406, 411 n.1 (S.D.N.Y. 2005) ("property that [party] admits having no possessory interest in . . . certainly cannot be recovered under [Rule 41].").

Regardless, a Rule 41(g) motion should be denied if the Government needs the property as evidence. *See, e.g., United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). Continuing need may be established by proof that the Government will need the evidence in post-conviction proceedings. *See United States v. Stoune*, No. 19-14585, 2021 WL 141330, at *3 (11th Cir. Jan. 15, 2021) ("because [defendant's] 28 U.S.C. § 2255 motion to vacate remains pending, we cannot say that the government will not need these items if there is a new trial."); *United States*

11

*v. Garcon*, 406 F. App'x 366, 368 (11th Cir. 2010) (finding Petitioner was not entitled to return of two items of property because the items would be needed as evidence at a retrial in the event Petitioner was able to successfully overturn his conviction in pending 2255 proceedings); *Sosa-Pintor v. United States*, No. 4:19-CV-033-MAC-CAN, 2019 WL 2273758, at *2 (E.D. Tex. Apr. 22, 2019), *rec. adopted*, 2019 WL 2267293 (E.D. Tex. May 24, 2019) (defendant's pending 2255 motion constitutes a legitimate reason for continued possession of the seized evidence).  Indeed, even the prospect of a 2255 motion provides a legitimate reason for the Government to retain property.  *United States v. Cobb*, 2017 WL 3499257, at *3 (M.D. Fla. Aug. 16, 2017) ("[t]he Government's need for the Property as evidence has not ceased since [petitioner] may still file a 2255 civil action related to his criminal case").

## ARGUMENT

The IRS has not had possession of the materials at issue in this case for nearly a decade, so Rule 41(g) is not an available remedy against it.  *See Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008); *see also Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007).

The DOL initially did not return any documents because those items were under the jurisdiction of Judge Chatigny, who found that "the Government's retention of the documents pending further proceedings in this case is reasonable." *Carpenter*, 2015 WL 9461496, at *8; *see also Koskinen*, 2015 WL 3510300, at *8 ("those motions pending in his criminal case before Judge Chatigny indicate that the plaintiffs will have the opportunity to seek the return of their property in other fora").  Carpenter's criminal convictions became final when certiorari was denied on November 9, 2020.  *See Carpenter v. United States*, No. 20-455, 2020 WL 6551799 (S. Ct. Nov. 9, 2020).  The DOL maintains custody of the corporate records seized in 2011 because (1) Carpenter has not established lawful ownership of the materials; and (2) the records

are still needed by the Government and its officials to defend themselves from civil damages and collateral attacks on Carpenter's convictions.

   I.   **Plaintiffs Have Not Established That They Are Entitled to Possession of the Records.**

First, return or destruction of the business records is inappropriate because Plaintiffs have never established that they are eligible to possess the seized items. A movant is not entitled to the return of property under Rule 41(g) to which he cannot claim lawful ownership. *Ferreira*, 354 F. Supp. 2d at 409 (citing *United States v. Cauwenberghe*, 827 F.2d 424, 433-34 (9th Cir. 1987)). "To qualify as a 'person aggrieved' under Rule 41, a defendant must show that his privacy has been invaded in some way by the alleged unlawful search. Invasion of someone else's privacy is insufficient, since the Fourth Amendment does not relate to the competency of evidence illegally seized from others." *United States v. Lewis,* 270 F. Supp. 807, 809 (S.D.N.Y. 1967).

Here, Plaintiffs have consistently disclaimed an interest in the vast majority of the corporate records seized by the DOL and have not identified any specific materials over which they have a personal stake. BASI, rather than Carpenter and his company, rented 100 Grist Mill Road and claimed that it was the "owner and custodian" of *all* property seized from that office building in 2010. *See* Doc. No. 48-1 at 1-2; *Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-mc-60-AVC, Doc. No. 1 at 4. Carpenter has consistently denied control over 100 Grist Mill Road and the companies housed there, claiming that he "stepped down from all Benistar-related entities in January of 2004, and was never an officer or signatory for NOVA or its affiliates." *Carpenter*, Doc. No. 83 at 4; *see also Koskinen*, Doc. No. 129-2 at ¶ 44 & Doc. No. 129-6 at 7. Denying Carpenter's Rule 41(g) motion for the return of these same items in 2015, Judge Chatigny observed that Carpenter "has not established that he has standing to return the vast majority of documents, which are in the nature of corporate records." *Carpenter*, 2015 WL 9461496, at *7;

13

*see also Carpenter*, Doc. No. 312 (Transcript of Telephonic Conference Nov. 6, 2017) (denying reconsideration of suppression as to the 2010 warrant, and stating, "I also think that it's important to recognize that, as the government points out, Mr. Carpenter does not have standing to seek a suppression order as to the great bulk of the government trial exhibits which resulted from the search in 2010.").

As this Court has recognized, Carpenter stated that only around 12% of the material initially seized by the IRS constituted the files and records of GMC. *See Koskinen*, Doc. No. 144 at 17. Plaintiffs have not further identified these items such that this Court can reasonably determine whether they must be returned. *See id.*, Doc. No. 151 at 6 n.6 (finding that "Plaintiffs' failure to provide additional details on the specifics of any documents retained also makes it impossible for me to determine which of the documents at issue actually belong to plaintiffs"). Nearly a decade after evidence of his felony schemes was seized by the DOL, Carpenter still has not set forth the specific items to which he claims a personal possessory interest, much less established that he is entitled to their return.

It is insufficient for Plaintiffs to urge that they have a personal stake in only a small percentage of unidentified items seized in 2011, but then demand the return of *all* material, including the BASI records and documents belonging to various other entities housed at 100 Grist Mill Road, that constitute the vast majority of evidence seized by the DOL. Plaintiffs bear the burden of proof to show that they have standing to demand the return of the business records in Government custody. Having repeatedly failed to establish an interest in the documents that they seek, Plaintiffs are not entitled to relief under Rule 41(g). Accordingly, the Government's refusal to return all items is entirely appropriate. *See, e.g., Ferreira*, 354 F. Supp. 2d at 411 n.1 (denying motion for return of property because defendant "has failed to establish the threshold issue of ownership as to any of the material[.]"); *In re Wiltron Assocs., Ltd.*, 49 F.R.D. 170, 173

(S.D.N.Y. 1970) ("In the absence of Zohn's ability to establish ownership, and in view of the conflict as to the ownership of the certificates as between others, the certificates should not in any event be returned to Zohn [under Rule 41], at least until ownership is established.").

Moreover, giving Carpenter (a twice-convicted fraudster) and/or GMC (which Carpenter alone controls) the corporate records—which contain personal PII, financial, and medical information of hundreds of private citizens—that belong to other business entities would be inconsistent with Judge Chatigny's imposition of numerous restrictions that prohibit Carpenter from engaging in any for-profit business or acting in a fiduciary capacity. *See* Doc. No. 466 at 3.

## II. The Government's Need For The Property Has Not Ended.

Through repeated attempts to undermine the legitimacy of his indictment, prosecution, and conviction, Carpenter continues to place the items seized by the DOL into controversy. He therefore has assured that those materials are needed by the Government for ongoing court proceedings and that a Rule 41(g) remedy is improper.

When a conviction is final on direct review, a court retains equitable jurisdiction over motions for return of property. *See Diaz v. United States,* 517 F.3d 608, 610 (2d Cir. 2008); *Mora v. United States,* 955 F.2d 156, 160 (2d Cir. 1992). However, Rule 41(g) does not mandate the return of property just because a conviction is final or because the seized evidence is no longer needed for purposes of criminal prosecution. *See, e.g., United States v. $16,072.00 in U.S. Currency,* 374 F. Supp. 3d 205, 209 (N.D.N.Y. 2019); *see also Chambers*, 192 F.3d at 377. Such a requirement would be counterproductive, particularly where a convicted individual like Carpenter seeks access to the very information that he misused in furtherance of his crimes. Accordingly, some courts have found that "the moving party, having been convicted of a crime, bears the burden of proving that he is entitled to the return of the property." *Awan*, 2014 WL 1343129, at *3. Other courts have placed the burden on the Government to show that it has a

legitimate reason not to return the property to the person from whom it was seized.  *See Morgan*, 443 F. Supp. 3d at 407.  Even there, though, the Government submits that its general interest in protecting the personal information of innocent third parties from misuse by a convicted felon sufficiently establishes any possible evidentiary burden.

Regardless of the burden of proof, it is a "generally-accepted rule that a district court cannot order the return of property on a Fed. R. Crim. P. 41(g) motion when the government has a continuing need for the property as evidence." *$16,072.00 in U.S. Currency,* 374 F. Supp. 3d at 209 (citing *Gotti*, 244 F. Supp. 2d at 124).  As this Court recognized, "[t]he Second Circuit has noted that in cases where seized property is being used in a separate and ongoing proceeding, Rule 41 jurisdiction 'is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials.'" *Carpenter*, 2015 WL 3510300, at *8 (quoting *De Almeida*, 459 F.3d at 382).

Here, the Government's need for the records continues.  In their pending *Bivens* lawsuit, Plaintiffs seek compensatory and punitive damages partially based on allegations that "defendants seized items beyond what was authorized, including income tax filings, banking, insurance policies and other personal information of Mr. Carpenter's wholly unrelated to any conceivable violation of any law or pursuant to any lawful purpose of the search." *Allen*, Doc. No. 1 at ¶ 16.  They also contend that the materials seized by the DOL improperly included "attorney-client privileged communications between Mr. Carpenter and his counsel regarding the prosecution of a criminal case then pending in the United States District Court for the District of Massachusetts bearing docket number 1:04-cr-10029." *Id.* at ¶ 19.  Plaintiffs specifically fault defendant Corsi for purportedly gathering "among other items beyond the lawful reach of the warrant, confidential information regarding Mr. Carpenter's life insurance policies, personal tax returns, and Mr. Carpenter's homeowner[']s insurance policy." *Id.* at ¶ 24.  Plaintiffs recently

have confirmed that they intend to press these *Bivens* claims and oppose dismissal of their lawsuit. *See Allen*, Doc. Nos. 67 & 68 (opposing Defendants' motion to dismiss action). Thus, the Government needs the seized evidence to defend these *Bivens* claims.

Although Carpenter's conviction has been affirmed by the Second Circuit and certiorari was denied, Carpenter is still pursuing numerous challenges to his conviction. He continues to file motions within his criminal case with the ultimate goal of invalidating his conviction. Carpenter recently has sought grand jury transcripts, claiming that the Government lied to the grand jury and that evidence the Government seized during the two searches included exculpatory evidence that the Government withheld from the grand jury. *See Carpenter*, Doc. Nos. 538 at 3, 538-1 at 2, 5-6, & 542. Thus, the Government needs the seized evidence to defend these claims.

Carpenter plans additional motions, warning that "[t]here should be no doubt in the Government's mind that there will be further litigation against the Government in this case if they do not turn over the Grand Jury Transcripts **now** as they say that they allegedly did after Petitioner's trial was to start in February of 2016." Doc. No. 542 at 5 (emphasis in original). Carpenter has also filed yet another motion to dismiss the indictment. *See id.*, Doc. No. 539. The Government has opposed the motion, arguing that it is untimely and that the Court may construe his motion to set aside and vacate his conviction under 28 U.S.C. § 2255. *See id.*, Doc. No. 543. If what's past is prologue, Carpenter soon will collaterally attack his 57-count conviction. In his mail- and wire-fraud prosecution in the District of Massachusetts, which was affirmed by the First Circuit in 2015, *see United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015), Carpenter filed a section 2255 petition, and, to this day, still seeks to vacate that 19-count conviction, $14,053,715.52 forfeiture order, and 36-month sentence. *See United States v.*

*Carpenter*, 2019 WL 722631 (D. Mass. Feb. 20, 2019), *appeal docketed*, No. 20-2133 (1st Cir. Dec. 1, 2020).

Carpenter himself has indicated he intends to seek to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in the STOLI case. In a recent filing in the criminal case, Carpenter claimed he "now has ironclad evidence of either a suppression of Brady/Jencks evidence on the part of the Government, or an Ineffective Assistance of Counsel claim for his future Petition under 28 U.S.C. § 2255." *See id.*, Doc. No. 542 at 1.

Plaintiffs continue to request money damages and the reversal of Carpenter's criminal conviction in multiple fora by challenging the propriety of the DOL's document seizures. But they simultaneously demand the Court order the return or destruction of the very same documents. Having placed in controversy the content of the documents that the DOL seized in 2011, Plaintiffs cannot be heard to complain that the DOL wishes to maintain that evidence in order that those individuals may defend themselves and the Government may defend Carpenter's conviction from collateral attack. Plaintiffs' litigation against the Government has not ended, so the Government's need for the property also has not ended. *See, e.g.*, *Stoune*, 2021 WL 141330, at *3; *Garcon*, 406 F. App'x at 368; *Cobb*, 2017 WL 3499257 at *3.

## Conclusion

This Court has been asked to consider the fourth and fifth motions under Rule 41(g) seeking the return or destruction of evidence of Daniel Carpenter's STOLI crimes. But Plaintiffs have failed to establish entitlement to the materials that were seized such that they are "aggrieved" by the Government's continued possession. Moreover, Plaintiffs' litigiousness has assured that the Government needs the documents to defend against Plaintiffs' serial lawsuits and motions.

Defendants therefore ask the Court to deny Plaintiffs' Rule 41(g) motion and dismiss this case.

Respectfully Submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice


*/s/ Jordan A. Konig*
JORDAN A. KONIG (phv07255)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
Tel: (202) 305-7917; Fax: (202) 514-5238
Email:  Jordan.A.Konig@usdoj.gov


Leonard C Boyle
Acting United States Attorney

*/s/ Christine Sciarrino*
Christine Sciarrino
Assistant United States Attorney
United States Attorney's Office
157 Church Street -25th Floor
New Haven, Connecticut   06510
Tel. (203) 821-3780/Fax (203) 773-5315
Email: Christine.Sciarrino@usdoj.gov
Federal No. CT3393

## **CERTIFICATE OF SERVICE**

I certify that on March 24, 2021, I filed the *Response to Order to Show Cause* with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all parties registered to receive such notice.

                                      */s/ Christine Sciarrino*
                                      CHRISTINE SCIARRINO
                                      Assistant United States Attorney