UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL CARPENTER and | : | |
| GRIST MILL CAPITAL, LLC, | : | CASE NO. 3:14-cv-741 (SRU) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| LYNN ALLEN *et. al.* | : | JANUARY 14, 2022 |
| : | | |
| | : | |
| Defendants. | : | |

**PLAINTIFF GRIST MILL CAPITAL, LLC'S**
**PRELIMINARY DAMAGES ANALYSIS**

The Plaintiff Grist Mill Capital, LLC (GMC) hereby submits its Preliminary Damages Analysis. Although the Court set a period ending January 15, 2022 for damages discovery at doc. entry #93, the Defendants have not pursued any discovery relating to damages and this Plaintiff submits its preliminary analysis of damages for the benefit of the Court and the Defendants.

**I.    Basis of Loss**

In summary, GMC was damaged by the conduct of the Department of Labor ("DOL")[1] in seizing files and associated materials on May 26, 2011, which precluded GMC from selling the life insurance policies in its possession.[2] The government continues to erroneously conflate the claims of Daniel Carpenter with that of GMC, which clearly should be treated separately.

---

[1] The IRS had previously seized files on April 20, 2010 which was the subject of *Carpenter vs. Shulman*, 3:13-cv-563 (SRU), a case now closed. The DOL then did its own seizure on May 26, 2011 which is the subject of this *Bivens* action.

[2] That conduct was compounded on May 25, 2011, when AUSA Novick served a subpoena upon Halloran and Sage requesting that the subpoena be kept confidential and requiring production of the documents seized by the IRS on April 20, 2010. *See* Exh. 1, Novick May 25, 2021 Letter and Subpoena. Grist Mill

The legality of that seizure of its assets is challenged by GMC[3], and the seizure of those policies and associated materials is what caused a majority of the damages to it. The damages are thus caused by the government's illegal search and seizure, refusal to provide access to records, and intentional destruction of records, resulting in the complete loss of the Grist Mill Capital, LLC portfolio. Several policies were then foreclosed by Ridgewood Finance or lapsed by virtue of a lack of premium payments as GMC had no further assets and was forced out of business.

On May 25, 2011, AUSA David Novick served a subpoena upon Halloran and Sage requesting that the subpoena be kept confidential and requiring production of documents seized by the IRS on April 20, 2010. *See Exh. 1, Novick May 25, 2011 Letter and Subpoena.* The 2011 subpoena lists a series of boxes. *See id.* The list of boxes in the 2011 subpoena is identical to the list of boxes in Wayne Bursey's Affidavit filed on April 29, 2010 in Judge Covello's court in support of Grist Mill Capital, LLC request to obtain access to its records. *See Exh. 2, Bursey Aff. ¶ 12.*

As the Court is aware, the boxes have still not been returned to Grist Mill Capital, LLC. *See Exh. 3, Boxes Not Returned Listing.* Further, Grist Mill Capital. LLC did not learn about the "secret" subpoena until November of 2020. Following that, AUSA Novick refused to permit access to the information. *See Exh. 4, Aug. 30, 2021 D. Labelle Email.* As of October 27, 2021, Grist Mill Capital, LLC still has not received access to its records.

Plaintiff Grist Mill Capital, LLC has multiple damages calculation models from which it may choose to use at trial, as outlined below. The damages are caused by the Defendants' illegal

---

Capital. LLC learned about the "secret" subpoena in November of 2020. Following that, AUSA Novick refused to permit access to the information. *See Exh. 4, Aug. 30, 2021 D. Labelle Email.*

[3] Although Judge Chatigny denied a motion to suppress the fruits of the search and seizure in *United States v. Carpenter,* 3:13-cr-216 (RNC*)*, GMC was not a party to that case and had no opportunity to be heard before the Court.

search and seizure of vital financial documents, refusal to provide access to records, and intentional destruction of records, resulting in the complete loss of the Grist Mill Capital, LLC portfolio. Similarly, the government's illegal actions caused the loss of the Charter Oak Trust portfolio that is the subject of Collateral Assignment Agreements in favor of Grist Mill Capital, LLC.

**II.    Damage Analysis**

    **1.    Lost Net Profit – Sale of Grist Mill Capital, LLC Portfolio**

The Wayne Bursey affidavit attached as Exhibit 2 states that the IRS absconded with records belonging to the Charter Oak Trust and that there is no reason for the IRS to seize Charter Oak Trust records because it could not possibly be associated with any tax records or the IRS search warrant. *See Exh. 2, Bursey Aff. ¶¶ 6-7.* Further, negotiations were occurring to sell the policy portfolio with a cumulative face value of $2 billion owned by Grist Mill Capital, LLC. As a result of the May 25, 2011 subpoena, GMC lost its portfolio of policies.

At a minimum, Grist Mill Capital, LLC would have been paid a very conservative market rate of 14%. The calculation of damages is as follows:

    $2,000,000,000.00 x 14% = <u>$280,000,000.00</u>

In the alternative, the calculation at a still-conservative market rate of 20% is as follows:

    $2,000,000,000.00 x 20% = <u>$400,000,000.00</u>

    **2.    Lost Net Profit – Sale of Charter Oak Trust Portfolio and Collateral Assignment to Grist Mill Capital, LLC**

The Charter Oak Trust owned a portfolio containing policies with a cumulative face value of $450 million. The Charter Oak Trust policies were the subject of collateral assignment agreements and UCC-1 filings in favor of Grist Mill Capital, LLC. A copy of an actual Collateral Assignment Agreement as used is located at *Exhibit 5*.

Using the conservative market rate of 20%, the calculation of damages is as follows:

| | |
|---|---:|
| Face value | $450,000,000.00 |
| Market rate         X | 20% |
| Gross sales proceeds | $90,000,000.00 |
| Less: Ridgewood debt payoff | -$35,000,000.00 |
| Estimated sales costs and commissions | <u>-$3,000,000.00</u> |
| Lost net profit | <u>$52,000,000.00</u> |

### 3. Out of Pocket Cost – Grist Mill Capital, LLC

The separate listing attached as Exhibit 6 details the various out of pocket costs incurred by Grist Mill Capital, LLC, which totals $107,000,000.00. *See Exhibit 6, GMC Expenditures Summary.*

### 4. Reinsurance Payment/Lost Death Benefits – Chart Oak Trust

Attached as Exhibit 7 is an April 8, 2019 Declaration filed on behalf of Lincoln Financial Group. Lincoln admits that Lincoln received a net amount in excess of $39 million from reinsurers. *See Exh. 7, Lincoln Declaration pp. 2-3, ¶ 7.*

The reinsurance payments received by Lincoln Financial Group that total over $39,000,000.00 were based on a $2 million premium payment to the reinsurance carriers represents a fair valuation of death benefits lost by the Charter Oak Trust. Because Charter Oak Trust was deprived of its policies, it was deprived of the death benefits, as the reinsurance payments represent payments of death benefits that otherwise would have been received by Charter Oak Trust and then paid to Grist Mill Capital, LLC under the Collateral Assignment Agreements. *See Exh. 7, Lincoln Declaration pp. 2-3, ¶ 7.*

**III.     Conclusion**

Based upon the above analysis, the plaintiff GMC was clearly damaged by the illegal acts of the Defendants and is entitled to Damages in excess of $100,000,000 to be determined at trial.

> THE PLAINTIFF,
> GRIST MILL CAPITAL, LLC
>
> */s/ Jonathan J. Einhorn*
>
> JONATHAN J. EINHORN
> 129 WHITNEY AVENUE
> NEW HAVEN, CT 06510
> FEDERAL BAR NO. ct00163
> EINHORNLAWOFFICE@GMAIL.COM

<u>CERTIFICATION</u>

I hereby certify that on this 14th day of January, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

> */s/ Jonathan J. Einhorn*
> JONATHAN J. EINHORN