


# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations

# OPERATIONAL PLAN

| Subject | Violation Character | | |
|---|---|---|---|
| **Charter Oak Trust**<br>(Benistar)<br>100 Grist Mill Road<br>Simsbury, CT | 18 USC 1033<br>18 USC 1343<br>18 USC 1341 | **File No.:** | 25-703H-0002-LCJ |
| | | **By:** | SA Lynn Allen |
| | | **At:** | Meriden, CT |
| | | **Date:** | 05/19/11 |
| | | **Approved By:** | Acting SAC ███████ |
| | | **Reviewed By:** | ASAC Cheryl Garcia |

| I. TYPE OF OPERATION | | | | | |
|---|---|---|---|---|---|
| **UNDERCOVER OPERATION** | **ARREST WARRANT** | **SEARCH WARRANT** | **VEHICLE STOP** | **CONSENSUAL MONITORING** | **OTHER** |
| ☐ | ☐ | **X** | ☐ | ☐ | ☐ |

| MISSION STATEMENT |
|---|
| Safely execute search warrant on Charter Oak Trust, 100 Grist Mill Road, Simsbury, Connecticut |

| BRIEFING LOCATION | BRIEFING DATE AND TIME |
|---|---|
| 1 Mill Pond Lane, Simsbury, CT<br>(parking lot on left after you enter street) | May 26, 2011  9:00am |

| STAGING LOCATION | STAGING DATE AND TIME |
|---|---|
| 1 Mill Pond Lane, Simsbury, CT<br>(parking lot on left after you enter street) | May 26, 2011  9:00am |

| Distribution: | Case File (Original)<br>ASAC Cheryl Garcia<br>Acting SAC ███████ | |
|---|---|---|
| | | **OIG – XXX (Ops Plan) (Rev 01-05-2009)** |




# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations

| II. GENERAL SITUATION |
| --- |

**CASE BACKGROUND:**

Information developed by the OLRFI and EBSA has shown that the subjects are misclassifying the Charter Oak Trust as an ERISA plan to perpetrate an insurance fraud scheme. Additionally the subjects are suspected of embezzling from the plan benefits and structuring transactions and laundering money through various benefit plans accounts.

The Trustee, Plan Administrators, Insurance Agents and Insureds appear to be involved in a scheme to defraud insurance companies by providing fraudulent documentation of a 419 plan. The Trust purports to be a 419 plan, which is employer funded for death benefits for employees. Documentation submitted to insurance companies shows the Trust to be employer funded with no outside financing or loans, likely because insurance companies scrutinize third party financed loans and probihit stranger-owner life insurance policies. Evidence shows that all the policies within the Charter Oak Trust are being financed by third party investors and are not 419 plans.

**OBJECTIVE:**
Safely execute search warrant at Charter Oak Trust, 100 Grist Mill Road, Simsbury, Connecticut. Establish and maintain a controlled and secure search site. Obtain records as specified in the search warrant attachment. Interview willing individuals at the site.

**PARTICIPATING AGENCIES:**
OLRFI and EBSA

**WEATHER CONDITIONS:**

**INTELLIGENCE UPDATE:** To be given at Briefing



| III. SITUATION - TARGET LOCATION | |
|---|---|
| **ADDRESS** | **TELEPHONE NUMBER** |
| Charter Oak Trust, 100 Grist Mill Road, Simsbury, Connecticut. | 860-408-7000 |

| **DESCRIPTION OF LOCATION** |
|---|
| The subject address is a large, single story office building. The lower portion of the building consists of red brick and window, while the upper portion consists of horizontal gray siding. The property is accessed by a short driveway off of Grist Mill Road. At the bottom of the driveway is a red brick structure with a sign attached to it that says, "100 GRIST MILL ROAD." At the top of the driveway, as you approach the parking lot, is a wooden sign that reads, "DIRECTORY, ENTRANCE 1, BENISTAR."  There is no signage on the exterior of the building itself. |

| **PHOTOGRAPH OF LOCATION** |
|---|
|  |



| IV. SITUATION- TARGET PERSONS | | |
|---|---|---|
| **TARGET NAME** | **HOME ADDRESS** | **HOME TELEPHONE** |
| Daniel Carpenter | ██████████ ██████████ | ██████████ |
| **RACE/SEX** | **WORK ADDRESS** | |
| Caucasian Male | 100 Grist Mill Road, Simsbury, CT | |
| **DATE OF BIRTH** | **SOCIAL SECURITY NUMBER** | |
| ██████ | ████-4417 | |

**TARGET(S) KNOWN TO BE ARMED (YES ☐ NO ☒)**

**PHOTOGRAPHS AVAILABLE  (YES ☒ NO ☐)** (Attached)

**DESCRIPTION/CHARACTERISTICS (SCARS, MARKS, TATTOOS, ETC.):**
None known

**CRIMINAL HISTORY (ARRESTS AND CONVICTIONS):**
████████████████████████████████████████████████████████

**SPECIALIZED TRAINING (I.E. MILITARY, POLICE, MARTIAL ARTS, ETC.):**
None known

**OTHER NAMES / ALIASES / ADDRESSES USED:**
NONE

**ADDITIONAL INFORMATION (INCLUDE TYPES OF WEAPONS(S) ETC.):**
NONE

| **RELATIVES (Relation)** | **ADDRESS** | **HOME TELEPHONE** |
|---|---|---|
| ██████████ (wife) | ████████████ | ██████████ |

**VEHICLES (YEAR-MAKE-MODEL-COLOR-LICENSE-STATE- ETC.):**



Carpenter has no vehicles registered to him.

| IV. SITUATION- TARGET PERSONS | | |
|---|---|---|
| **TARGET NAME** | **HOME ADDRESS** | **HOME TELEPHONE** |
| ▮▮▮▮▮ | ▮▮▮▮▮ ▮▮▮▮ | ▮▮▮▮▮ |
| **RACE/SEX** | **WORK ADDRESS** | |
| Caucasian Male | 100 Grist Mill Road, Simsbury, CT | |
| **DATE OF BIRTH** | **SOCIAL SECURITY NUMBER** | |
| ▮▮▮ | ▮▮▮▮ | |

**TARGET(S) KNOWN TO BE ARMED (YES ☐ NO ☒)**

**PHOTOGRAPHS AVAILABLE  (YES ☒ NO ☐) ) (Attached)**

**DESCRIPTION/CHARACTERISTICS (SCARS, MARKS, TATTOOS, ETC.):**
None known

**CRIMINAL HISTORY (ARRESTS AND CONVICTIONS):**
NONE

**SPECIALIZED TRAINING (I.E. MILITARY, POLICE, MARTIAL ARTS, ETC.):**
None known

**OTHER NAMES / ALIASES / ADDRESSES USED:**
NONE

**ADDITIONAL INFORMATION (INCLUDE TYPES OF WEAPONS(S) ETC.):**
NONE



| RELATIVES (Relation) | ADDRESS | HOME TELEPHONE |
|---|---|---|
| █████████████ | ███████████████ | ███████████ |

| VEHICLES (YEAR-MAKE-MODEL-COLOR-LICENSE-STATE- ETC.): |
|---|
| █████ has no vehicles registered to him. |

| IV. SITUATION- TARGET PERSONS | | |
|---|---|---|
| **TARGET NAME** | **HOME ADDRESS** | **HOME TELEPHONE** |
| ███████████ | ███████████████ ████████ | ██████████ |
| **RACE/SEX** | **WORK ADDRESS** | |
| Caucasian Male | 100 Grist Mill Road, Simsbury, CT | |
| **DATE OF BIRTH** | **SOCIAL SECURITY NUMBER** | |
| ████████ | ███████████ | |

| TARGET(S) KNOWN TO BE ARMED (YES ☐ NO ☒) |
|---|
| PHOTOGRAPHS AVAILABLE  (YES ☒ NO ☐) (Attached) |

| DESCRIPTION/CHARACTERISTICS (SCARS, MARKS, TATTOOS, ETC.): |
|---|
| None known |

| CRIMINAL HISTORY (ARRESTS AND CONVICTIONS): |
|---|
| NONE |

| SPECIALIZED TRAINING (I.E. MILITARY, POLICE, MARTIAL ARTS, ETC.): |
|---|
| None known |



# U.S. Department of Labor
## Office of Inspector General
Office of Labor Racketeering and Fraud Investigations



**OTHER NAMES / ALIASES / ADDRESSES USED:**
NONE

**ADDITIONAL INFORMATION (INCLUDE TYPES OF WEAPONS(S) ETC.):**
NONE

| RELATIVES (Relation) | ADDRESS | HOME TELEPHONE |
|---|---|---|
| ███████████ | ███████████ | ███████████ |

**VEHICLES (YEAR-MAKE-MODEL-COLOR-LICENSE-STATE- ETC.):**

███████████████████

---

## V. PERSONNEL AND ASSIGNMENTS

### Assignment Codes

| | | |
|---|---|---|
| A - Arrest | BR – Breacher | C- Cover Team |
| CS – Counter Surveillance | ET - Entry Team | EV – Evidence Collection |
| K9 – Canine - Animal Control | P – Perimeter Security | PH – Photos/Video |
| PT – Prisoner Transport | SV – Surveillance | SK - Sketch |

**SURVEILLANCE TEAM:**
Being that this is an office location and physical surveillance of the exterior of the building would not produce any useful information, no surveillance will be conducted prior to the execution of the warrants.

**APPROACH / KNOCK AND ANNOUNCEMENT / BREACHING INSTRUCTIONS:**
All agents exit vehicles together. Appropriate agents proceed to front/rear cover positions. Remaining agents will tactically enter business. Agents will knock & announce "Police" or "Federal Agents" with a SW upon entering. If needed, team leader will contact a locksmith, as the subject company appears to own the building and there is no known management company. Locksmith companies: Top Class Lock Service, 987 Hopmeadow St., Simsbury, CT 860-865-0486. Lock Stock and Barrell Locksmith, 1530 Hopmeadow St., Simsbury, CT 860-658-0542.



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations



**ENTRY TEAM / METHOD:**
Enter tactically.  Stay in pairs and clear/sweep the interior of the facility. Entry agents: ███████
████████████████████████████████████████ Garcia.

**FRONT COVER:**
As needed at locations.  Lock doors if possible. Control arrivals and ensure no one enters the business.

**REAR COVER:**
Should not be required at offices, but check for alternate entry and exit doors.

**SEARCH/EVIDENCE:**
Remaining agents will search and seize evidence in accordance with IN -08-1200 and the SW and its accompanying affidavit.  Other evidence in plain view may be seized; however, notify the case agent.  All evidence will be labeled/recorded, then transported to the Meriden Field Office. Evidence Custodian is SA ███████. SA ███████ will be consulted regarding any computer evidence.

**VIDEO/DIGITAL PHOTOGRAPHY/SKETCH:**
After the security sweep is conducted and the site is safe and secure photographs of the premises will be taken.  Photo and sketch agent is SA ███████.



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations



**SUBJECT INTERVIEWS:**

If subjects are present, separate targets and limit their movements to a secured area during the conduct of the search.   If targets stay, assigned agents will conduct interviews if directed to do so with questions to be provided by Case Agent Lynn Allen.   Interviewing SAs ███████ and Investigator ███████.

**OTHER:**

## VI. CONTINGENCY PLANS



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations



**FAILURE TO GAIN ENTRY:**
Call the landlord. Call a locksmith. <u>Locksmith companies</u>: Top Class Lock Service, 987 Hopmeadow St., Simsbury, CT 860-865-0486. Lock Stock and Barrell Locksmith, 1530 Hopmeadow St., Simsbury, CT 860-658-0542.

**ARMED CONFRONTATION:**
Agents are expected to deal with confrontations in accordance with IGD 8-600 (Policies and Procedures for Exercise of Law Enforcement Powers, Including the Use of Firearms and Non-Lethal Control Techniques and the US Attorney General's Guidelines regarding the Use of Force.

**FLEEING SUBJECT:**
N/A

**ARRIVING PERSONS:**
Persons arriving will not be permitted to enter the business or residence until the search is concluded. Efforts should be made to determine the identities of arriving individuals and the nature of their visit.

**TACTICAL EGRESS:**
Agents in the best position will coordinate tactical egress and be the last out of the business. Pairs will remain together while making a tactical withdrawal.

**MEDIA:**
Media presence is not anticipated; however, if there are any media requests they should be forwarded to the USAO via the supervisor. SAs are cautioned against making any statements to the media regarding the operation or any matter associated with this investigation.

**LOCAL LAW ENFORCEMENT:** Simsbury Police Department 860-658-3100 to be contacted by the Site Leader prior to execution.

**LOAD/GO DRIVER:** █████████

---

## VII. EQUIPMENT CHECKLIST



# U.S. Department of Labor
## Office of Inspector General
Office of Labor Racketeering and Fraud Investigations



| PERSONAL EQUIPMENT | | |
|---|---|---|
| X  DUTY WEAPON | X  BDUS/JACKET | X  HANDCUFFS |
| X  EXTRA AMMUNITION | ☐  HAT/HELMET | ☐  SURGICAL GLOVES |
| X  BATON | X  RADIO | ☐  GOGGLES |
| X  O.C. SPRAY | ☐  BINOCULARS | ☐  BATTERIES |
| X  BALLISTIC VEST | X  FLASHLIGHT | X  RAID SHIRT/JACKET |
| X  BELT BADGES | X  AGENCY ID | ☐  OTHER |

| SPECIAL EQUIPMENT | | |
|---|---|---|
| ☐  BODY BUNKER | ☐  Colt SMG | ☐  BULL HORN |
| ☐  RAM | ☐  AR-15 | X  EVIDENCE KIT |
| ☐  SLEDGE HAMMER | ☐  SHOTGUN | X  STILL CAMERA |
| ☐  PICK | ☐  .308 RIFLE | ☐  VIDEOCAMERA |
| ☐  PRY BAR / HALOGEN | ☐  MP-5 | ☐  NIGHT VISION |
| ☐  HOOKS / CHAINS | ☐  37MM LAUNCHER | X  TRAUMA KIT |
| ☐  RABBIT TOOL | ☐  CHEMICAL AGENTS | X  CELLULAR PHONE |
| ☐  BOLT CUTTERS | ☐  DIVERSIONARY DEVICES | ☐  FLASH ROLL |
| ☐  HYDRAULIC OPENER | ☐  FIRE EXTINGUISHER | ☐  STEP STOOL |
| ☐  MULTIPURPOSE SAW | ☐  EXTENSION MIRROR | ☐  LADDER |

| ☐  PROPS  (SPECIFY) |
|---|
| ☐  OTHER  (SPECIFY) |
| ☐  OTHER  (SPECIFY) |
| ☐  OTHER  (SPECIFY) |

COMMENTS:




# U.S. Department of Labor
## Office of Inspector General
Office of Labor Racketeering and Fraud Investigations

| VIII. COMMUNICATION |
| --- |

| WILL LOCAL POLICE BE NOTIFIED BEFORE EXECUTION?    YES X NO ☐ |
| --- |

| DEPARTMENT | CONTACT | TELEPHONE | EMERGENCY |
| --- | --- | --- | --- |
| POLICE | Simsbury | 860-658-3100 | 911 |
| EMT | Ambulance | | 911 |
| FIRE | Fire | | 911 |

| ROLE | PERSON | AGENCY | TELEPHONE |
| --- | --- | --- | --- |
| Co - Case Agent | SA Lynn Allen | OLRFI | 860-883-8966 |
| Co - Case Investigator | Inv. ███████ | EBSA | ███████ |
| Site Leader / Entry / Search | SA ███████ | OLRFI | ███████ |
| Site Supervisor / Entry / Search | ASAC Cheryl Garcia | OLRFI | 646-423-0858 |
| Entry / CERU | SA ███████ | OLRFI | ███████ |
| Entry / Photo / Sketch / Search | SA ███████ | OLRFI | ███████ |
| Entry / Search / CERU | SA ███████ | OLRFI | ███████ |
| Entry / Evidence / Search | SA ███████ | OLRFI | ███████ |
| Entry / Search | SA ███████ | OLRFI | ███████ |
| Search / CERU | Inv. ███████ | EBSA | ███████ |



| Search after entry | Inv. ███████ (unarmed) | EBSA | ████████ |
|---|---|---|---|
| Search after entry | Inv. ████████ (unarmed) | EBSA | ████████ |
| Search after entry | Inv. ███████████ (unarmed) | EBSA | ████████ |
| Search after entry | Inv. Tim Corsi (unarmed) | EBSA | 202-657-2387 |
| Search after entry | Inv. █████████ (unarmed) | EBSA | ████████ |
| Search after entry | Inv. ████████ (unarmed) | EBSA | ████████ |
| AUSA | David Novick | District of CT | 203-821-3732 |



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations



## IX. EMERGENCY INFORMATION

### NEAREST POLICE STATION

(Name and directions)

Simsbury Police Department, 933 Hopmeadow Street, Simsbury, CT     Phone: 860-658-3100

### NEAREST HOSPITAL

(Name and directions)

Hartford Hospital, 80 Seymour Street, Hartford, CT          Phone:  860-545-5000

### NEAREST TRAUMA CENTER

(Name and directions)

Hartford Hospital, 80 Seymour Street, Hartford, CT          Phone:  860-545-5000



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations



## X. FINAL CHECKLIST

| | |
|---|---|
| **X   PHOTOGRAPH ATTACHED** | ☐   **PURSUIT POLICY DISCUSSED** |
| **X   MAPS ATTACHED** | ☐   **CRISIS INCIDENT PLAN DISCUSSED** |
| ☐   **POST ARREST ISSUES DISCUSSED** | ☐   **WARRANT/AFFIDAVIT READ / SIGNED** |
| ☐   **DOL AND DOJ FIREARMS / USE OF FORCE POLICY DISCUSSED** | **BY ALL PARTICIPANTS** |

## PHOTOGRAPHS

**Daniel Carpenter (likely at site #1, possibly #2)**

**(likely at site #1, possibly #2)**











# U.S. Department of Labor
## Office of Inspector General
Office of Labor Racketeering and Fraud Investigations

| SATELLITE IMAGERY |
| --- |



## MAP OF AREA






# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations

---

## Driving Directions

---

**From site at 100 Grist Mill Rd to local police:**

**100 grist mill rd, simsbury, ct**                                                    ge

**Trip mileage:** 1.8 miles      Time: 08 min 09 sec

You are at 100 Grist Mill Ln, Simsbury, 06070-2484, Hartford County, CT, USA

| | | |
|---|---|---|
| 1. | Go North on Grist Mill Rd<br>Show Step Map | 600 feet |
| 2. | Turn right onto CT-167 (CT-309, West St)<br>Show Step Map | 0.4 miles |
| 3. | Turn sharply right onto US-202 (CT-10, Hopmeadow St)<br>Show Step Map | 0.3 miles |
| 4. | Make a U-turn onto US-202 (CT-10, Hopmeadow St)<br>Show Step Map | 1.0 miles |
| 5. | You are at 933 Hopmeadow St, Simsbury, 06070-1822, Hartford County, CT, USA | |

**933 hopmeadow st, simsbury, ct**

**Trip mileage:** 1.8 miles      Time: 08 min 09 sec



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations

---

## Driving Directions

---

### From site at 100 Grist Mill Rd to local hospital:

**100 grist mill road, simsbury, ct** ‎ge

**Trip mileage:** 14.0 miles     Time: 41 min 21 sec

You are at 100 Grist Mill Ln, Simsbury, 06070-2484, Hartford County, CT, USA

| | | |
|---|---|---|
| 1. | Go North on Grist Mill Rd <br> Show Step Map | 600 feet |
| 2. | Turn right onto CT-167 (CT-309, West St) <br> Show Step Map | 0.4 miles |
| 3. | Turn sharply right onto US-202 (CT-10, Hopmeadow St) <br> Show Step Map | 1.8 miles |
| 4. | Turn left onto CT-185 (Hartford Rd) <br> Show Step Map | 4.7 miles |
| 5. | Bear right onto CT-218 (N Main St) <br> Show Step Map | 1.5 miles |
| 6. | Bear right onto N Main St <br> Show Step Map | 0.5 miles |
| 7. | Turn left onto Asylum Av <br> Show Step Map | 2.9 miles |
| 8. | Bear right onto Sigourney St <br> Show Step Map | 0.7 miles |
| 9. | Continue onto Park Ter <br> Show Step Map | 1000 feet |
| 10. | Turn sharply left onto Park St <br> Show Step Map | 0.6 miles |
| 11. | Turn right onto Washington St <br> Show Step Map | 0.4 miles |
| 12. | Turn left onto Retreat Av <br> Show Step Map | 600 feet |
| 13. | Turn left onto Seymour St <br> Show Step Map | 500 feet |



# U.S. Department of Labor
## Office of Inspector General
### Office of Labor Racketeering and Fraud Investigations



## Driving Directions

To staging area 1 from I-95 North:

1.  Take exit #48 onto I-91 North – go 37.7 miles

2.  Take exit 32B on the left – go 1.1 miles

3.  Turn right onto Main Street – go 0.2 miles

4.  Continue on Albany Avenue – go 2.1 miles

5.  Turn right on Bloomfield Avenue – go 0.8 miles

6.  Take a slight left onto CT-185 / W Simsbury Rd – go 6.4 miles

7.  Turn right on Hopmeadow St – go 1.8 miles

8.  Take a sharp left onto West St – go 0.5 miles

9.  Turn left onto Grist Mill Rd – go 350 feet

10. Turn left onto Mill Pond Rd and left into the parking lot


To staging area 1 from I-91 South:

1.  Take exit #40 to merge onto CT-20 W/CT-401N – go 3.1 miles

2.  Exit onto CT-20W/Rainbow Rd – go 3.4 miles

3.  Turn left onto Holcomb St – go 2.0 miles

4.  Continue onto Floydville Rd – go 0.2 miles

5.  Turn left onto Wolcott Rd – go 1.5 miles

6.  Turn left onto CT-10 S/US-202/Hopmeadow St – go 2.9 miles

7.  Take a slight right onto West St – go 0.5 miles

8.  Turn left onto Grist Mill Rd – go 350 feet



9.   Turn left onto Mill Pond Rd and left into the parking lot


From staging area 1 to location 1:

1.   Take a right onto Mill Pond Rd – go a few feet

2.   Take a left onto Grist Mill Road – continue to end

3.   Driveway for destination will be on the left


| POST - ARREST ISSUES |
|---|
| **ARE THE U.S.MARSHAL'S AVAILABLE FOR PROCESSING?**   N/A   YES ☐ NO ☐ |
| **If no, describe the plans for processing and detention of prisoners until transfer of custody of prisoners to the U.S. Marshals:**<br><br><br>N/A – No arrests planned<br><br><br><br> |
| **IS THERE A MAGISTATE AVAILABLE FOR INITIAL APPEARANCE?**   N/A   YES ☐ NO ☐ |



---

**If no, describe the plans for bringing the prisoner before an alternative authorized person:**

N/A – No arrests planned

---

# DOJ USE OF FORCE POLICY

## Policy Statement Use of Deadly Force

GENERAL PRINCIPLES

I. Law enforcement officers and correctional officers of the Department of Justice may use deadly force only when necessary, that is, when the officer has a reasonable belief that the subject of such force poses an imminent danger of death or serious physical in jury to the officer or to another person.

    (A) Deadly force may not be used solely to prevent the escape of a fleeing suspect.

    (B) Firearms may not be fired solely to disable moving vehicles.

    (C) If feasible and if to do so would not increase the danger to the officer or others, a verbal warning to submit to the authority of the officer shall be given prior to the use of deadly force.

    (D) Warning shots are not permitted outside of the prison context.

    (E) Officers will be trained in alternate methods and tactics for handling resisting subjects which must be used when the use of deadly force is not authorized by this policy.

CUSTODIAL SITUATIONS



II. Unless force other than deadly force appears to be sufficient, deadly force may be used to prevent the escape of a prisoner committed to the custody of the Attorney General or the Bureau of Prisons

> (A) If the prisoner is effecting his or her escape in a manner that poses an imminent danger to the safety of the officer or another person; or

> (B) if the prisoner is escaping from a secure facility or is escaping while in transit to or from a secure facility.

III. If the subject is in a non-secure facility, deadly force may be used only when the subject poses an imminent danger of death or serious physical injury to the officer or another person.

IV. If the subject is in transit to or from a non-secure facility and is not accompanied by a person who is in transit to or from a secure facility, deadly force may be used only when the subject poses an imminent danger of death or serious physical injury to the officer or to another person.

V. After an escape from a facility or vehicle and its immediate environs has been affected, officers attempting to apprehend the escaped prisoner may use deadly force only when the escaped prisoner poses an imminent danger of death or serious physical injury to the officer or another person.

VI. Deadly force may be used to maintain or restore control of a prison or correctional facility when the officer reasonably believes that the intended subject of the deadly force is participating in a disturbance in a manner that threatens the safety of the officer or another person.

VII. In the prison context, warning shots may be fired within or in the immediate environs of a secure facility if there is no apparent danger to innocent persons: (A) If reasonably necessary to deter or prevent the subject from escaping from a secure facility; or (B) if reasonably necessary to deter or prevent the subject's use of deadly force or force likely to cause serious physical injury.

APPLICATION OF THE POLICY

VIII. This Policy is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, against the United States, its departments, agencies, or other entities, its officers or employees, or any other person.

## Commentary Regarding the Use of Deadly Force in Non-Custodial Situations

### I. Introduction

The Department of Justice hereby establishes a uniform policy with respect to the use of deadly force in both custodial and non-custodial situations. This commentary does not address the use of deadly force upon subjects relinquished to persons or facilities responsible for detention or incarceration. All other uses of deadly force are addressed in this commentary. The policy and this commentary provide



practical guidance for officers who must make grave decisions regarding the use of deadly force under the most trying of circumstances. The policy also is intended to maintain uniformity among the various Departmental components and to achieve uniform standards and training with respect to the use of deadly force. Although each component may still develop and conduct its own training on deadly force, the policy governs the use of deadly force under all circumstances.

The policy is the product of discussion among the various law enforcement agencies whose personnel are called upon to make decisions regarding the use of deadly force, of review of the current policies governing the use of force, and of advice of legal counsel from various Department components, including those charged with law enforcement, defense of civil actions filed against the government, enforcement of civil rights, and provision of constitutional advice. In developing the policy, it became apparent that decisional law provides only limited guidance regarding the use of deadly

force.(1) In addition, as a matter of principle, the Department deliberately did not formulate this policy to authorize force up to constitutional or other legal limits.(2)

## II. Definitions

**Deadly force** is the use of any force that is likely to cause death or serious physical injury. When an officer of the Department uses such force in non-custodial situations, it may only be done consistent with this policy. Force that is not likely to cause death or serious physical injury, but unexpectedly results in such harm or death, is not governed by this policy.

**Probable cause, reason to believe or a reasonable belief,** for purposes of this policy, means facts and circumstances, including the reasonable inferences drawn therefrom, known to the officer at the time of the use of deadly force, that would cause a reasonable officer to conclude that the point at issue is probably true. The reasonableness of a belief or decision must be viewed from the perspective of the officer on the scene, who may often be forced to make split-second decisions in circumstances that are tense, unpredictable, and rapidly evolving. Reasonableness is not to be viewed from the calm vantage point of hindsight.

## III. Principles on Use of Deadly Force

The Department of Justice recognizes and respects the integrity and paramount value of all human life. Consistent with that primary value, but beyond the scope of the principles articulated here, is the Department's full commitment to take all reasonable steps to prevent the need to use deadly force, as reflected in Departmental training and procedures. Yet even the best prevention policies are on occasion insufficient, as when an officer serving a warrant or conducting surveillance is confronted with a threat to his or her life. With respect to these situations and in keeping with the value of protecting all human life, the touchstone of the Department's policy regarding the use of deadly force is necessity. Use of deadly force must be objectively reasonable under all the circumstances known to the officer at the time.

The necessity to use deadly force arises when all other available means of preventing imminent and grave danger to officers or other persons have failed or would be likely to fail. Thus, employing deadly



force is permissible when there is no safe alternative to using such force, and without it the officer or others would face imminent and grave danger. An officer is not required to place him or herself, another officer, a suspect, or the public in unreasonable danger of death or serious physical injury before using deadly force.

Determining whether deadly force is necessary may involve instantaneous decisions that encompass many factors, such as the likelihood that the subject will use deadly force on the officer or others if such force is not used by the officer; the officer's knowledge that the subject will likely acquiesce in arrest or recapture if the officer uses lesser force or no force at all; the capabilities of the subject; the subject's access to cover and weapons; the presence of other persons who may be at risk if force is or is not used; and the nature and the severity of the subject's criminal conduct or the danger posed.

Deadly force should never be used upon mere suspicion that a crime, no matter how serious, was committed, or simply upon the officer's determination that probable cause would support the arrest of the person being pursued or arrested for the commission of a crime. Deadly force may be used to prevent the escape of a fleeing subject if there is probable cause to believe: (1) the subject has committed a felony involving the infliction or threatened infliction of serious physical injury or death, and (2) the escape of the subject would pose an imminent danger of death or serious physical injury to the officer or to another person.

As used in this policy, "imminent" has a broader meaning than "immediate" or "instantaneous." The concept of "imminent" should be understood to be elastic, that is, involving a period of time dependent on the circumstances, rather than the fixed point of time implicit in the concept of "immediate" or "instantaneous." Thus, a subject may pose an imminent danger even if he or she is not at that very moment pointing a weapon at the officer if, for example, he or she has a weapon within reach or is running for cover carrying a weapon or running to a place where the officer has reason to believe a weapon is available.

## IV. Lesser Means

**Intermediate force.** If force lesser than deadly force could reasonably be expected to accomplish the same end, such as the arrest of a dangerous fleeing subject, without unreasonably increasing the danger to the officer or to others, then it must be used. Deadly force is not permissible in such circumstances, although the reasonableness of the officer's understanding at the time deadly force was used shall be the benchmark for assessing applications of this policy.

**Verbal warnings.** Before using deadly force, if feasible, officers will audibly command the subject to submit to their authority. Implicit in this requirement is the concept that officers will give the subject an opportunity to submit to such command unless danger is increased thereby. However, if giving such a command would itself pose a risk of death or serious bodily harm to the officer or others, it need not be given.

**Warning shots and shooting to disable.** Warning shots are not authorized. Discharge of a firearm is usually considered to be permissible only under the same circumstances when deadly force may be



used--that is, only when necessary to prevent loss of life or serious physical injury. Warning shots themselves may pose dangers to the officer or others.

Attempts to shoot to wound or to injure are unrealistic and, because of high miss rates and poor stopping effectiveness, can prove dangerous for the officer and others. Therefore, shooting merely to disable is strongly discouraged.

**Motor vehicles and their occupants.** Experience has demonstrated that the use of firearms to disable moving vehicles is either unsuccessful or results in an uncontrolled risk to the safety of officers or others. Shooting to disable a moving motor vehicle is forbidden.

An officer who has reason to believe that a driver or occupant poses an imminent danger of death or serious physical injury to the officer or others may fire at the driver or an occupant only when such shots are necessary to avoid death or serious physical injury to the officer or another, and only if the public safety benefits of using such force reasonably appear to outweigh any risks to the officer or the public, such as from a crash, ricocheting bullets, or return fire from the subject or another person in the vehicle.

Except in rare circumstances, the danger permitting the officer to use deadly force must be by means other than the vehicle.

## V. Miscellaneous

Deadly force may be directed against dogs or other vicious animals when necessary in self-defense or defense of others.

Nothing in this policy and the attached commentary is intended to create or does create an enforceable legal right or private right of action.

**NOTES:**

1. Many issues addressed in the policy and this memorandum has never been addressed in reported decisions or the law remains unresolved. Courts would step outside their proper role if they formulated detailed policies with respect to the procedures governing deadly force; in contrast, the Department has the discretion to determine what the policy should be and to provide guidance to its employees with regard to these solemn issues. Cases arise in procedural postures--typically civil tort or civil rights actions, or motions to dismiss or overturn criminal charges or convictions—in which a wrongful act on the part of the government may not lead to recovery or sanctions. As a result, the court often does not reach the question of whether the use of force was wrongful.

2. The leading Fourth Amendment cases in this area are Tennessee v. Garner, 47 U.S. 1 (1985) and Graham v. Connor, 490 U.S. 386 (1989).