## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

DANIEL E. CARPENTER and      :
GRIST MILL CAPITAL, LLC,

                               :

       Plaintiffs,                 :        Docket No.  3:14CV741 (SRU)

                               :

VS.

                               :

LYNN ALLEN, CHERI GARCIA,
TIMOTHY CORSI, JOHN DOES 1-100,    :
and JANE DOES 1-100,

                               :

       Defendants.                 March 9, 2022

## <u>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF GRIST MILL CAPTIAL, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF #100)</u>

The Defendants, Lynn Allen, Cheryl Garcia and Timothy Corsi, hereby respectfully file this opposition to the Plaintiff, Grist Mill Capital, LLC's ("GMC") motion for summary judgment.  ECF #100. Based upon the reasons that follow, GMC's motion for summary judgment should be denied, and Defendants' pending motion for summary judgment, ECF #96, should be granted.  The Defendants respectfully incorporate by reference the legal standards previously set forth in their memorandum in support of their motion for summary judgment. ECF #96-1 at 3.

## <u>DISCUSSION</u>

GMC's recent motion for summary judgment is nothing more than a regurgitation of failed challenges concerning the May 26, 2011 search of offices located at 100 Grist Mill Road in Simsbury, Connecticut ("the Simsbury site").  As set forth in the following summary, all of

the legal and factual arguments in GMC's supporting memorandum have been previously rejected by the District Court and the Second Circuit Court of Appeals, or are addressed in motions already pending before this Court:

- ***GMC's First Argument: The search warrant was defective because the supporting affidavit was not attached to the warrant***. *See* ECF #100-1 at 1, 4-7.

   Both the District Court and the Second Circuit Court of Appeals found that the search warrant was not defective. *See United States v. Daniel Carpenter,* Docket No. 3:13CR226 (RNC), ECF #155 at 11 n.4 (denying Carpenter's motion to suppress and stating "any failure to attach the search warrant affidavits does not render the warrants defective."); *id.*, ECF #326 (denying motion for reconsideration of motion to suppress based on *United States v. Wey*); *United States v. Bursey*, 801 Fed. Appx. 1, 4 (2d Cir. Jan. 13, 2020) (rejecting Carpenter's argument that the "district court erroneously denied his motion to suppress evidence seized on the basis of facially defective search warrants.", *cert. denied Carpenter v. United States,* No. 20-455, 2020 WL 6651799, at *1 *U.S. Nov. 9, 2020).  Moreover, in this *Bivens* action, this Court has already held that "[t]he Fourth Amendment claims challenging the search warrant . . . are barred . . .". ECF #79.

- ***GMC's Second Argument: The search warrant was overly broad and not particularized***.  *See* ECF #100-1 at 1-2.

   Both the District Court and the Second Circuit already rejected this argument. *See United States v. Daniel Carpenter,* Docket No. 3:13CR226 (RNC), ECF #155 at 8-14 (denying Carpenter's motion to suppress, holding that "the warrants at issue here are sufficiently particularized," and further holding that "neither the 2010 warrant nor

the 2011 warrant is overbroad."); *Bursey*, 801 Fed. Appx. at  4 ("we conclude that the

district court did not err when it denied Carpenter's motion to suppress.").  It also

bears repeating that, in light of these prior rulings, this Court has already held that the

Plaintiffs' Fourth Amendments challenges to the search warrant "are barred[.]" ECF

#79.

- *GMC's Third Argument: The Simsbury site was ransacked during the search and*
  *Carpenter and other individuals were held against their will and incommunicado*
  *for several hours*.  *See* ECF #100-1 at 2.

  The Defendants have addressed these arguments in their memorandum in

  support of their pending motion for summary judgment. *See* ECF #96-1 at 16-20.

  Additionally, GMC may not advance claims on behalf of other individuals and/or

  Carpenter.  *See* ECF #96-1 at 17, n. 12.  Indeed, GMC concedes that it is not pursuing

  Carpenter's detention claims.  *See* ECF #100-1 at 3, n. 2.

- *GMC's Fourth Argument: The search of the Simsbury site was unreasonable in*
  *scope and duration*.  *See* ECF #100-1 at 2.

  The Defendants have already addressed these issues in its motion for

  summary judgment. *See* ECF #96-1 at 20-22. Specifically, to the extent GMC argues

  that the agents seized documents beyond the scope of the warrant, such as "income

  tax filings, banking, insurance policies and other items," *see* ECF #100-1 at 2, 9, the

  search warrant expressly authorized the seizure of such items. *See* ECF #96-1 at 20-

  22; *United States v. Sealed Search Warrant,* Docket No. 3:18-mj-59 (JGM), ECF No.

  1-1 at 53, 54, ¶ a, c, f, j, k, m, n.  With respect to the duration of the search, that

  argument was rejected at oral argument before this Court, held on July 14, 2021, *see*

ECF No. 79 (noting remaining claims), largely for the same reasons discussed in this

Court's Ruling on Motions to Dismiss and for Summary Judgment in *Carpenter, et*

*al. v. Commissioner of IRS, et al.*, Docket No. 3:13CV563 (SRU), ECF No. 144 at 30

n.43.

- ***GMC's Fifth Argument: GMC had no knowledge of a "secret subpoena" issued to***
  ***the law firm of Halloran & Sage and was never indicted.*** *See* ECF #100-1 at 2.

This argument is a red herring. First, the allegations at issue in this *Bivens*

action pertain only to the documents seized as a result of the May 26, 2011 search

warrant. *See* Complaint, ECF #1. The Complaint contains no allegations about

documents obtained pursuant to a subpoena issued to the law firm of Halloran & Sage

or that such a subpoena was somehow improper.

Second, to the extent GMC claims it was unaware of the subpoena, neither the

United States Attorney's Office nor the Defendants (to the extent any of them were

aware of the subpoena) were obligated to inform GMC about the subpoena. As GMC

concedes, the subpoena was directed to a third-party, the law firm of Halloran & Sage

for records in its possession, not to GMC. By law, the Government was prohibited

from disclosing the subpoena to anyone else. *See* Fed. R. Crim. P. 6(e) (prohibiting

government attorneys and others from disclosing matters occurring before the grand

jury). In any event, whether or not GMC was aware of the subpoena is irrelevant to

the remaining issues in this *Bivens* suit concerning the manner in which a search

warrant was executed. *See* ECF #79. GMC has not even explained how its

knowledge of a subpoena to a third-party for records stored outside of the Simsbury

site is in any way related to the execution of the search warrant at the Simsbury site.

Lastly, the parties in this action have fully briefed, and this Court has fully considered, what bearing, if any, a lack of a criminal indictment as to GMC might have within the context of this *Bivens* suit.   *See* GMC's Memorandum in Opposition to Defendants' Motion to Dismiss, ECF #68 at 2; Defendants' Reply Memorandum in further support of their Motion to Dismiss, ECF #71 at 6-8, and Ruling, ECF #79.

- ***GMC's Sixth Argument: Property seized during the May 26, 2011 search should be returned***.  *See* ECF #100-1 at 2.

This issue is the subject of a separate Rule 41(g) motion for return of property that has been fully briefed and is pending before this Court.  *See* ECF #79; *see also* Government's Response to Order to Show Cause, ECF #73, and Government's Notice Concerning Destruction of Seized Documents, ECF #92.

- ***GMC's Seventh Argument: The search prevented GMC from selling the Charter Oak Trust insurance policies and was the proximate cause of GMC going out of business*** *See* ECF #100-1 at 2; *see also* GMC's Preliminary Damages Analysis, ECF #94 at 2 (further claiming that the Government refused to provide access to seized records and intentionally destroyed records "resulting in the complete loss of the [GMC] portfolio.").  ECF #94 at 3.

Many of the Charter Oak Trust policies were already sold or transferred by the time the search warrant was executed, and GMC no longer had any interest in many of the policies.  *See United States v. Daniel Carpenter*, Docket No. 3:13CR226 (RNC), ECF #212 at 61-68 (discussing sale of Charter Oak Trust policies and noting that "Ridgewood [Financing] and GMC executed a settlement agreement on September 30, 2010, whereby ownership of [Charter Oak Trust] policies was

transferred to Ridgewood in exchange for extinguishing GMC's debt."). In fact, according to Carpenter's testimony at trial, GMC was in financial ruins because of the September 30, 2010 settlement agreement with Ridgewood, well before the search warrant was executed:

> Carpenter's counsel: And as a consequence of this settlement agreement having been reached, what was the consequences as it related to Grist Mill Capital?
>
> Carpenter: Economically, financially, I mean, we were wiped out. So we had no policies and we had lost millions and millions of dollars.
>
> . . .
>
> Carpenter's counsel: After September [30], 2010, which would have been the date the agreement was entered into, what if anything did Grist Mill Capital or Charter Oak, as you know it, do in terms of winding down these various insurance policies?
>
> Carpenter: We honestly didn't do anything without coordinating with Ridgewood, because at that point the policies were really Ridgewood's property and we agreed with them as part of the agreement to cooperate with them as best we could.

*United States v. Daniel Carpenter*, Docket No. 3:13CR226 (RNC), ECF #501 at 2853 to 2854 (Tr. Vol. 16).

Carpenter further explained the economic status of GMC during his cross-examination:

> AUSA: What was the economic status of Grist Mill Capital on or about September 30, 2010?
>
> Carpenter: Charter Oak Trust had no money whatsoever in it; and the only thing I could say about Grist Mill Capital at that point in time is that its financial situation was dire.

*Id.*; ECF #503 at 3118-3119 (Tr. Vol. 18). Thus, any claim that the execution of the search warrant led to GMC's demise is flatly contradicted by Carpenter's own sworn testimony.

Despite Carpenter's testimony, GMC now claims it was unable to sell the policies after the search, and it seeks to recover damages. However, Judge Chatigny found that each of the life insurance policies in the Charter Oak Trust was "procured by fraud." *See United States v. Daniel Carpenter*, Docket No. 3:13CR226 (RNC), ECF #212 at 85, Verdicts and Special Findings; *see also Bursey*, 801 Fed. Appx. at 2 (noting that Carpenter "fraudulently induced insurance providers to issue and maintain life insurance policies on elderly strangers."). Moreover, Carpenter controlled GMC and signed all documents on its behalf. *See United States v. Daniel Carpenter*, Docket No. 3:13CR226 (RNC), ECF #212 at 24, 47 n.31; *id.*, ECF #501 at 2908-2909 (Carpenter testified that he controlled GMC) (Tr. Vol. 16); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 6123104, at *3 (S.D.N.Y. Nov. 20, 2013) ("Mr. Carpenter is the only individual with an ownership interest, membership interest, or beneficial interest, direct or indirect, in [GMC]."). Essentially, GMC seeks proceeds of Carpenter's fraud as damages. To award damages to GMC, and in turn Carpenter, for his own crime is beyond absurd.[1]

In any event, even if GMC did still have an interest in the Charter Oak Trust policies, as the Defendants previously noted, GMC has not established that it is

---

[1] Assuming *arguendo* that GMC had sold its portfolio, the proceeds of such a sale would have been subject to asset forfeiture since, but for Carpenter's criminal fraud, GMC's portfolio would not have existed or otherwise been available to even contemplate a sale. *See United States v. Daniel Carpenter, Docket No. 3:13CR226 (RNC)*, ECF #212, Verdicts and Special Findings.

entitled to possession of the records.  *See* ECF #73 at 13.  More importantly, this

Court appropriately noted at the July 14, 2021 hearing that GMC could have

requested duplicate copies from the insurance carriers or the Government, and indeed

the Government reported at the July hearing that duplicate copies were provided to

Carpenter's counsel in discovery.  Nonetheless, this Court's previous Ruling noted

that the surviving *Bivens* claims in this action concerned the *manner* in which the

search of the Simsbury site was conducted.  ECF #79.  The damages claimed by

GMC are based on an alleged lack of access to documents after the search was

concluded, which has no bearing as to the manner in which the search warrant was

executed.  *See* Defendants' memorandum in support of motion for summary

judgment, ECF #96-1 at 11-14.  To the extent GMC's claim is that it would have had

access to business related documents *but for* the execution of the search warrant, such

a claim is contrary to the allegations of the Complaint, which was based on

allegations concerning the seizure of Carpenter's *personal* financial information.  *See*

Complaint, ECF #1 at 4, ¶ 16 and at 6, ¶ 24.

- **GMC's Eight Argument: Government may not rely on good-faith exception.**  *See*
  ECF #100-1 at 10.

    The Second Circuit has already held that "the agents' reliance on [the warrant]

was reasonable" and that the good-faith exception barred any claim that the agents

relied on a defective warrant. *See Bursey,* 801 Fed. Appx. at 4 ("Accordingly, the

evidence seized as a result of the warrants was admissible under the good faith

exception, and we conclude that the district court did not err when it denied

Carpenter's motion to suppress."). To the extent GMC argues that the agents seized

documents beyond the scope of the warrant, such as "income tax filings, banking, insurance policies and other items," *see* ECF #100-1 at 2, the Defendants have already addressed this issue in its motion for summary judgment. *See* ECF #96-1 at 20-22.  Specifically, the Defendants noted that the search warrant expressly authorized the seizure of such items. *See* ECF #96-1 at 20-22; *United States v. Sealed Search Warrant,* Docket No. 3:18-mj-59 (JGM), ECF No. 1-1 at 53, 54, ¶ a, c, f, j, k, m, n.  Since the agent's reliance on the warrant was reasonable, *see Bursey,* 801 Fed. Appx. at 4, their seizure of documents expressly enumerated in the warrant was also reasonable and falls under the good-faith exception.

In short, the majority of GMC's arguments in its motion for summary judgment amount to nothing more than an attempt to relitigate its prior failed challenges to the search warrant, which were soundly rejected by both the District Court and the Second Circuit in the criminal case, and which this Court has already held "are barred" in this *Bivens* action. ECF #79. GMC's remaining arguments should be rejected for the reasons set forth in the Defendants' Motion for Summary Judgment.

WHEREFORE, Defendants Lynn Allen, Cheryl Garcia and Timothy Corsi respectfully request that GMC's motion for summary judgment be denied, and respectfully maintain that this Court should grant summary judgment in favor of the Defendants as to all remaining Fourth Amendment claims relating to the reasonableness of the May 26, 2011 search and seizure.

Respectfully submitted,

For Defendants Lynn Allen, Cheryl Garcia
and Timothy Corsi,


Leonard C Boyle
United States Attorney

     /s/

Christine Sciarrino
Assistant United States Attorney
United States Attorney's Office
157 Church Street -25th Floor
New Haven, Connecticut   06510
Tel. (203) 821-3780/Fax (203) 773-5315
Email: Christine.Sciarrino@usdoj.gov
Federal No. CT3393

<u>Certification</u>

I hereby certify that on March 9, 2022, a copy of the foregoing Memorandum was filed electronically and served by mail to anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/

Christine Sciarrino
Assistant United States Attorney

11