UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL CARPENTER, et al.,
    Plaintiffs,

v.

LYNN ALLEN, et al.,
    Defendants.

No. 3:14-cv-741 (SRU)

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This case arises out of a search conducted at 100 Grist Mill Road, in Simsbury, Connecticut, on May 26, 2011, (the "2011 Search") by the IRS's Criminal Investigation Division. Plaintiffs, Daniel Carpenter ("Carpenter") and Grist Mill Capital, LLC ("GMC"), filed the present action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), against multiple named defendants in their individual capacities: Special Agents Lynn Allen, Cheri Garcia, and Timothy Corsi (collectively, the "Agents"). Carpenter and GMC allege the Agents, *inter alia*, violated the U.S. Constitution's Fourth Amendment.

For the reasons set forth below, I conclude that the undisputed facts show there was no Fourth Amendment violation. I accordingly **deny** GMC's motion for summary judgment, **doc. no. 100**, and **grant** the Agents' motion for summary judgment, **doc. no. 96**.

### I. Background

A. <u>STOLI Criminal Case</u>

Daniel Carpenter was prosecuted for defrauding life insurance companies into issuing "high-value universal life insurance policies to straw insureds," *i.e.*, "stranger-oriented life insurance (STOLI) policies." Verdict and Special Findings, *United States v.*

*Carpenter*, No. 3:13-cr-226 (RNC) (the "STOLI Case"), Doc. No. 212 at 1.  After a bench trial, District Judge Robert N. Chatigny found Carpenter guilty of "mail and wire fraud,  conspiracy to commit mail and wire fraud, illegal money transactions, money laundering, conspiracy to commit money laundering, and aiding and abetting" those offenses.  *Id.* at 2, 4.[1]

Carpenter had filed various pre-trial motions, including a motion to suppress evidence seized from the 2011 Search of 100 Grist Mill Road in Simsbury, Connecticut, doc. no. 80, and a motion to suppress evidence seized from another search that had occurred on April 20, 2010 ("the 2010 Search").  Doc. No. 82.  In December 2015, Judge Chatigny denied both motions to suppress for reasons set forth in a written order.  Ruling on Mot. to Suppress, Doc. No. 155.

B.  2013 *Bivens* Case

Carpenter and GMC filed a *Bivens* action challenging the execution of an IRS search warrant during the 2010 Search.  *Carpenter et al. v. Shulman et al.*, No. 3:13-cv-563 (SRU), Doc. No. 1.  Carpenter and GMC principally alleged that the 2010 Search violated their Fourth Amendment rights, and Carpenter's Fifth and Sixth Amendment rights.  *See id.* ¶ 1.

On August 15, 2016, defendant Shaun Schrader of the IRS's Criminal Investigation Division filed a motion to dismiss, arguing that Plaintiffs' claims were barred by qualified immunity and the *Heck v. Humphrey*[2] rule.  *See* Doc. No. 72.  Schrader noted that Judge Chatigny had denied Carpenter's motion to suppress evidence obtained in the 2010 Search.  *See* Doc. No. 74 at 3 (citing *United States v. Carpenter*, No. 3:13-cr-226 (RNC), Doc. No. 155).

---

[1] The Second Circuit affirmed Judge Chatigny's judgment, and the Supreme Court denied certiorari.  Mandate, Doc. No. 527; *Carpenter v. United States*, 141 S. Ct. 820 (2020).
[2] 512 U.S. 477 (1994).

2

On December 14, 2016, I entered an order in which I, *inter alia*, granted Schrader's motion to dismiss the Fourth Amendment claims of an invalid warrant, pursuant to the *Heck v. Humphrey* rule, without prejudice to renewal if Carpenter's conviction was invalidated. *See* Doc. No. 92 at 9.

C. <u>The Instant Case</u>

On May 22, 2014, Carpenter and GMC filed a second *Bivens* action—the present action—challenging the 2011 Search. *Carpenter et al. v. Allen et al.*, No. 3:14-cv-741 (SRU). Carpenter brought this suit against Special Agents Lynn Allen, in her individual and official capacities; Cheri Garcia, in her individual capacity; and Timothy Corsi, in his individual capacity. Compl., Doc. No. 1 ¶¶ 5-7. The case was stayed until Carpenter's criminal matter was resolved. *See* Docs. No. 28, 53.

The complaint alleges that: (1) the search warrant was facially deficient; (2) the defendants failed to produce a copy of a warrant "naming and authorizing a specific government agent to conduct the search;" (3) the search warrant was overly broad, not sufficiently particularized, and not supported by probable cause; (4) the manner in which the search was conducted, and the duration of the search, was unreasonable; (5) the defendants seized items beyond the scope of what was authorized; (6) Garcia unlawfully interrogated Carpenter without counsel, in violation of his Fifth and Sixth Amendment rights; and (7) the foregoing actions were motivated by "malice and prosecutorial vindictiveness." *See generally* Compl., Doc. No. 1.

On January 22, 2021, the Agents moved to dismiss the complaint. Doc. No. 60. I held oral argument on the motion and dismissed the claim for monetary damages against Allen in her

3

official capacity on the basis of sovereign immunity. Min. Entry, Doc. No. 79.[3] I determined that the complaint's Fourth Amendment claims challenging the search warrant's facial validity, malicious prosecution claim, and Fifth and Sixth Amendment claims were barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* I also held that the remaining Fourth Amendment claims relating to the manner of the search—the claims regarding the destruction of property, Carpenter's detention during the search, and whether the search exceeded the scope of the warrant— were not barred by *Heck* nor barred by qualified immunity, though I declined to rule on the qualified immunity issue due to disputed factual issues. *Id.*

Following discovery, the Agents moved for summary judgment. Doc. No. 96. GMC cross-moved for summary judgment regarding liability only. Doc. No. 100. The case was stayed pending appeal of my ruling on Carpenter and GMC's Rule 41(g) motion requesting the return of seized property. After the appeal, Carpenter and GMC submitted a Notice that they intended to preserve the following arguments: "[t]hat they oppose Defendants' Motions for Summary Judgment as raising both disputed issues of law and fact; . . . a. The search warrant in question was defective, b. The search exceeded the scope of the warrant, and c. The search warrant in question violated the Fourth Amendment to the U.S. Constitution." Notice, Doc. No. 135 at 1.

## II.    Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

---

[3] I also heard oral argument on Carpenter and GMC's Rule 41(g) motion requesting the return of seized property, which is unrelated to this ruling.

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The same standard applies to cross-motions for summary judgment. A court must "assess each motion on its own merits and . . . view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inference in favor of that party." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021) (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but it must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the nonmoving party has failed to make a sufficient showing on an essential

element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

**III.    Discussion**

A.  Fourth Amendment

Carpenter and GMC allege the Agents violated the Fourth Amendment when they executed a facially deficient warrant, "ransack[ed]" and caused "substantial damages to" 100 Grist Mill Road, seized items beyond what was authorized by the warrant, and searched the property after 10 p.m. *See* Compl., Doc. No. 1.

The Fourth Amendment governs "the reasonableness of the manner in which a search or seizure is conducted." *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). In assessing the constitutionality of a search, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee*, 471 U.S. at 8. I "examine the totality of the circumstances to determine whether a search is reasonable." *Samson v. California*, 547 U.S. 843, 848 (2006) (cleaned up).

   1. *Facially Deficient Warrant*

GMC argues the 2011 search warrant was so facially deficient that the Agents' reliance on it was unreasonable. *See* Doc. No. 108 at 5-6.[4] In his criminal proceedings, Carpenter had

---
[4] To be valid, a search warrant must (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal quotation marks omitted). "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Therefore, the particularized information may not be provided in documents

6

unsuccessfully moved to suppress evidence seized during the 2011 Search. Ruling on Mot. to Suppress, No. 3:13-cr-226 (RNC), Doc. No. 155 at 19. Due to Carpenter's lack of success in his criminal trial, I previously held that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the Fourth Amendment claims premised on the invalidity of the 2011 Search Warrant. No. 3:14-cv-741 (SRU), Min. Entry, Doc. No. 79 ("The Fourth Amendment claims challenging the search warrant, as well as the malicious prosecution and Fifth and Sixth Amendment claims, are barred under *Heck v. Humphrey*[.]").

*Heck v. Humphrey* provides that a section 1983 damages action may not proceed if a judgment in the plaintiffs' favor would "necessarily imply the invalidity of his conviction or sentence[,] unless the plaintiff can prove that "sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. at 486-87. *Heck* equally applies to *Bivens* damages actions. *See Abdullah v. Cassanta*, 2007 WL 1521058, at *3 (D. Conn. May 22, 2007) (citing *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)).

Carpenter's conviction rested on evidence obtained through execution of the 2011 warrant. *Compare generally* Verdict and Special Findings, No. 3:13-cr-226 (RNC), Doc. No. 212 *with* 2011 Search Warrant, No. 3:18-mj-59 (JGM), Doc. No. 2. If I were to rule the 2011 search warrant was facially deficient, that ruling would necessarily imply the invalidity of Carpenter's conviction. *See also D.S. v. City of N.Y.*, 736 F. App'x 284, 287 (2d Cir.

---

that are not attached to the search warrant or incorporated by reference. *Id.* at 557-58. "[A] warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 565.

2018) (affirming the district court's holding that *Heck* barred the plaintiff's claims that the defendants violated his Fourth Amendment right against unreasonable searches and seizures).

During oral argument on the cross-motions for summary judgment, GMC argued its claim that the warrant was facially deficient is not *Heck*-barred because GMC was not a party to the STOLI criminal proceedings. *Heck*, however, bars GMC's claim.

*Heck* may bar not only civil actions brought by the person with the criminal conviction, but also actions "brought by individuals other than the convicted criminal . . . ." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1046 (9th Cir. 2012). Specifically, *Heck* bars the action if the "individual[] other than the convicted criminal" would be precluded under state common law "from re-litigating issues that were already decided in [] trial." *Id.* at 1046-47.

In Connecticut, a party is collaterally estopped from re-litigating an issue if the party previously had a full and fair opportunity to litigate the issue; the "issue was actually litigated and necessarily determined in a prior action"; and the issue to be re-litigated is identical to the issue in the prior proceeding. *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 296-97, 306 (1991).

In the STOLI criminal case, Carpenter moved to suppress evidence the Agents obtained while executing the 2011 warrant. Mot. to Suppress Mem. of Law, No. 3:13-cr-226 (RNC), Doc. No. 81. Carpenter made the same arguments GMC makes in its motion for summary judgment, *i.e.*, the 2011 warrant was facially invalid because it was not sufficiently particularized and the search warrant affidavit was not attached to the warrant. *Id.* at 13-15. When Judge Chatigny denied Carpenter's Motion to Suppress, he concluded:

> The 2011 warrant does not include a description of the place to be searched or the items to be seized, but it does incorporate by reference Attachments B and D, which include this information. Attachment D limits the search to certain documents related to certain individuals and entities between 2006 and 2011. The documents are subdivided into

various categories, including copies of federal and state income tax returns related to certain individuals, and records of income and expenses relating to certain businesses. . . . In both instances, the warrants are sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize.

Ruling on Mot. to Suppress, Doc. No. 155 at 10-11 (citations omitted).

On appeal of Carpenter's convictions, the Second Circuit concluded that Judge Chatigny did not err when he denied Carpenter's Motion to Suppress the 2011 search warrant.

> Even if the warrants were facially invalid, the agents' reliance on them was reasonable. A defective warrant issued based on an affidavit providing detailed factual allegations will almost invariably demonstrate reasonable reliance. . . . Both [the 2010 and 2011] warrants were based on detailed affidavits that clearly described the crimes in question, the places to be searched, and the items to be seized. Accordingly, the evidence seized as a result of the warrants was admissible under the good faith exception, and we conclude that the district court did not err when it denied Carpenter's motion to suppress.

*United States v. Bursey*, 801 F. App'x 1, 4 (2d Cir. 2020), *cert. denied sub nom. Carpenter v. United States*, 141 S. Ct. 820 (2020) (summary order) (quoting *United States v. Clark*, 638 F.3d 89, 103 (2d Cir. 2011)) (cleaned up).

Although GMC argues *Heck* does not bar its claims, GMC is "in privity" with Carpenter under Connecticut law and thus bound by *Heck* to the same extent as Carpenter. "Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna*, 220 Conn. at 303. "[P]rivity . . . exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. A key consideration in determining the existence of privity is the sharing of the same legal right." *Id.* at 304 (cleaned up).

Carpenter and GMC are in privity because they share "the same legal right": the Fourth Amendment right to be free from an unreasonable search of 100 Grist Mill Road in Simsbury, Connecticut. The Agents searched the entire "office property located at 100 Grist Mill Road . . .

9

a large, single story office building." *See* 2011 Search Warrant, No. 3:18-mj-59 (JGM), Doc. No. 2 at 3; *see also* Garcia Aff., No. 3:14-cv-741 (SRU), Doc. No. 96-14 ¶ 7. GMC operated out of 100 Grist Mill Road, and Carpenter "had his office" there. Verdict and Special Findings, No. 3:13-cr-226, Doc. No. 212 at 23, 55. The search warrant specifically authorized the Agents to seize both GMC and Carpenter's records. 2011 Search Warrant, No. 3:18-mj-59, Doc. No. 2 at 5. When two individuals have a reasonable expectation of privacy in the same area, either individual may consent to or deny a search. *United States v. Matlock*, 415 U.S. 164, 171 (1974) ("[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.").

Carpenter and GMC were not just co-tenants; they were intimately intertwined in the fraudulent insurance scheme and shared a common interest in the scheme. "Mr. Carpenter acknowledged at trial that he controlled GMC, and documents admitted into evidence show that he signed on its behalf as Chairman of Managing Member." Verdict and Special Findings, No. 3:13-cr-226 (RNC), Doc. No. 212 at 24. "The evidence also shows that corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes." *Id.* at 26; *see also id.* at 29-30 (describing documentary evidence that showed how, through Carpenter and others, GMC profited from the STOLI schemes through a fee arrangement); *id.* at 47 n.31 ("The defendant[,] [Carpenter], who signed [funding] arrangements on behalf of GMC, was well aware of this arrangement.").

GMC and Carpenter had "common authority over" and a "sufficient relationship to" 100 Grist Mill Road. *Matlock*, 415 U.S. at 171. Carpenter therefore "adequately represented" GMC

when Judge Chatigny litigated his motion to suppress. *Aetna*, 200 Conn. at 304. *Heck v. Humphrey* precludes GMC from arguing that the 2011 search warrant was facially invalid.[5]

2. *Destruction* of *Property*

I previously held that "[t]he remaining Fourth Amendment claims relating to the manner of the search—that is, the claims regarding the destruction of property, Carpenter's detention during the search, and whether the search exceeded the scope of the warrant—are not barred by either *Heck* or qualified immunity." Min. Entry, Doc. No. 79. I now turn to those claims.

"Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). A law enforcement agent may be liable for property damage during a lawful search if the agent acted unreasonably or maliciously. *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995). District courts have routinely extended that principle to the Fourth Amendment context. *See, e.g.*, *Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 278 (D. Conn. 2013).

GMC and Carpenter allege the Agents "ransack[ed]" and "caus[ed] substantial damage to" the 100 Grist Mill Road office building. Compl., Doc. No. 1 ¶ 14. Yet, the plaintiffs provide no evidence to support those allegations. Photographs taken after the search give no indication that physical damage occurred. *See* Docs. No. 96-21, 96-22. The plaintiffs' damages analysis does not claim physical damages. *See* Dkt. No. 21-cv-1485 (RNC), Doc. No. 1-2 at 4-6. There

---

[5] The only potentially viable claim that the warrant was facially invalid is that it did not set forth the offenses for which probable cause was established. Those offenses were set forth in the search warrant application, doc. no. 96-11 at 1, but the application was not attached to the warrant. *See* Def. L. R. 56(a)2 Opp. Stmt., Doc. No. 104-1 ¶ 1. The search and seizure warrant form generally utilized by the federal courts, and used in this case, Form AO 93, does not call for the offense to be specified. Because that familiar form was signed by a judge and included detailed descriptions of the place to be searched and the things to be seized, in attachments, a law enforcement officer might reasonably have overlooked the warrant's claimed facial invalidity. Because that determination goes to the question of qualified immunity, however, I need not and do not reach it.

is therefore no genuine issue of material fact regarding destruction of property. No reasonable jury could find that the Agents caused "substantial damage to the premises."

3. *Search Beyond Scope of Warrant*

A search exceeding the scope of a validly-issued warrant, and subject to no other exceptions to the warrant requirement, is unconstitutional. *See Horton v. California*, 496 U.S. 128, 140 (1990). Carpenter and GMC allege the Agents seized items beyond the scope of the warrant's authorization and unlawfully continued to search after 10 p.m.

    a. Items Seized

Carpenter and GMC claim that "[t]he defendants seized items beyond the scope of what was authorized, including income tax filings, banking, insurance policies and other personal financial information of Mr. Carpenter's wholly unrelated to any conceivable violation of any law or pursuant to any lawful purpose of the search." Compl., Doc. No. 1 ¶ 16. Carpenter specifically argues the agents unlawfully seized his personal bank statements. Carpenter Aff., Doc. No. 106-1 ¶ 14. Wayne Bursey, Carpenter's criminal co-defendant, says the agents "took personal and business files and depositions from my office . . . which were not identified in the search warrant, and which relate to real estate companies . . . . not related to any tax investigations," and "also took my daily notebooks . . . my personal tax returns and personal 401K file contents." Bursey Aff., Doc. No. 100-8 ¶¶ 9-11.

The 2011 Search Warrant authorized seizure of "items or records, . . . relating to Daniel Carpenter, . . . Wayne Bursey, . . . [and] Grist Mill Capital, LLC[.]" 2011 Search Warrant, No. No. 3:18-mj-59 (JGM), Doc. No. 2 at 5. It authorized seizure of "[a]ll books and records, including all general ledgers, cash receipts journals, . . . bank statements, . . . billing statements, . . . Federal income tax returns . . . copies of federal and state income tax returns . . . [and] bank

12

records[.]" *Id.* at 5-7. Even assuming Carpenter or GMC has standing to challenge the Agents' seizure of Bursey's records, the 2011 search warrant authorized seizure of all complained-of items, even if they were "personal."

   b. Time of the Search

Plaintiffs allege the search was "unreasonable in . . . duration, and the defendants remained on the premises for an unreasonably long period of time into the early morning hours of the next day." Compl., Doc. No. 1 ¶ 15. The Agents were "commanded to execute th[e] warrant . . . in the daytime, 6:00 a.m. to 10 p.m." 2011 Search Warrant, 3:18-mj-59 (JGM), Doc. No. 2 at 1.

It is undisputed the Agents started executing the warrant before 10 p.m. "At approximately 10:00 a.m. on May 26, 2011, the Entry Team made initial entry at the Simsbury site." Corsi Aff., Doc. No. 96-23 ¶ 5. The Agents completed their initial security sweep at 10:24 a.m. Doc. No. 106 ¶ 12.

In *Carpenter et al. v. Shulman et al.*, No. 3:13-cv-563 (SRU), I addressed Carpenter and GMC's identical argument challenging the 2010 Search.

> I note that, even if the facts could be interpreted to show that the agents did indeed continue their search past 10:00 p.m., that would not constitute a Fourth Amendment violation. The requirement, in Federal Rule of Criminal Procedure 41, that a warrant be executed in the "daytime", **is satisfied as long as the search is commenced between 6:00 a.m. and 10:00 p.m., even if the search extends past 10:00 p.m**. *United States v. Vasquez*, 2017 WL 1435861, at *2 (E.D.N.Y. April 23, 2017). Moreover, "[a] search that continues into the night does not violate the Fourth Amendment as long as the extension of the search was reasonable." *Id.* at *3. Factors considered in assessing the reasonableness of the extension include the inconvenience to the occupants of the searched location, the degree of freedom allowed to the occupants during the search, and whether the search was conducted in a professional manner. *See id.* Here, the search was not of a private residence that was likely to be occupied during the late night hours, and the erstwhile occupants were accordingly not significantly inconvenienced. And, although Carpenter disputes whether any detention of employees occurred in the early stages of the search, it is clear that no employees were detained past 10 p.m., nor

13

otherwise had their freedom constrained at that time, beyond not being permitted to
interfere with the search. Carpenter has acknowledged the professionalism of the search.

Doc. No. 150 at 30 n.44 (emphasis added).

I adopt the above reasoning here. First, the Agents searched a commercial office building, not a private residence. *See* 2011 Search Warrant, Dkt. No. 18-mj-59 (JGM), Doc. No. 2 at 3. Second, there is no evidence suggesting the Agents conducted the search unprofessionally. At 7:27 p.m., Special Agent Garcia notified Carpenter's counsel that the Agents anticipated concluding the search at around 10 p.m. Doc. No. 100-13 at 16. At approximately 9:01 p.m., special agents notified a GMC employee that the search would take another four hours. *Id.* at 4. "At 11:21 p.m.," Garcia "contacted counsel for the Plaintiffs, . . . and advised that the search would be concluded at approximately 1:30 p.m. on May 27, 2011, and requested that 'someone [] come to the office to secure the building, accept copies of the inventory sheets and accept service of a few subpoenas.'" Garcia Aff., Doc. No. 96-14 ¶ 17 (alteration in original).

Further, no employees' freedom of movement was restrained after 10 p.m. Carpenter concedes he left of his own volition "in the afternoon" with his attorney, and "voluntarily returned later in the day . . . to retrieve some personal items." Doc. No. 106 ¶¶ 26-27. GMC has not submitted evidence indicating that any of its employees remained on the property after 10:00 p.m. In fact, Garcia's affidavit suggests the opposite; she reached out to Carpenter's attorney to request that someone return to the office to secure the building. Garcia Aff., Doc. No. 96-14 ¶ 17. Email correspondence between Carpenter's attorney and a GMC employee further suggest that all GMC employees had vacated the office. *See generally* Doc. No. 100-13.

I conclude the undisputed material facts establish that the Agents did not violate Carpenter or GMC's Fourth Amendment rights.

## IV. Conclusion

Based on the foregoing, I **deny** GMC's motion for summary judgment, **doc. no. 100**, and **grant** the Agents' motion for summary judgment, **doc. no. 96**. The Clerk shall close this file.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of March, 2024.

/s/ STEFAN R. UNDERHILL  
Stefan R. Underhill  
United States District Judge